**In re Laura Ann PETTIT, Debtor.**

**Bankruptcy No. 85–01698.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

March 26, 1986.

Frederick P. Corbit, Seattle, Wash., for trustee.

Quentin Steinberg, Seattle, Wash., for debtor.

Karen E. Boxx, Seattle, Wash., for PBN.

## OPINION

SIDNEY C. VOLINN, Bankruptcy Judge.

The trustee contends that the debtor's beneficial interests in two employee benefit plans are property of the estate and not properly claimed by the debtor as exempt. He seeks turnover of the property by the debtor's employer, Pacific Northwest Bell ("PNB"), pursuant to Section 542(a). PNB contends that the funds are not property of the estate while the debtor contends that even if they are estate property they are properly exempted under Section 522(d)(10)(E) of the federal exemption scheme which she has elected. The basis of her claim is that the plans are reasonably necessary for her support. The trustee denies that contention.

## STATEMENT OF FACTS

The debtor has been an employee of PNB since 1969. She is 36 years of age with no dependants. As of the date she filed her chapter 7 petition she had been employed by PNB for 16 years and would be eligible for retirement in another 19 years. She elected the federal scheme of exemptions under Section 522 and included her interest in two PNB employee benefit plans under Section 522(d)(10)(E). She has received $4,150. in cash from the trustee under Section 522(d)(5). She is currently employed by PNB and earns $488.50 per week.

As a PNB employee she participates in two employee benefit plans. These plans are the U.S. West Savings and Security Plan ("Savings Plan") and the U.S. West Employee Stock Ownership Plan ("ESOP") which are established, and administered, by her employer. As of the date she filed her petition the Savings Plan contained $6,376.64 and the ESOP contained 24 shares of stock valued at $2,128.00. Both

plans are qualified under the Employee Retirement Income Security Act ("ERISA") and Section 401(e) of the Internal Revenue Code of 1954 ("IRC"). As qualified plans they contain required restrictions against alienation and assignment. In order to determine the issues in this matter it is necessary to set forth the provisions of the two plans in detail.

The Savings Plan consists of voluntary contributions from the employee's wages together with employer contributions equal to 50 percent of the employee's contributions. The employer's portion does not vest in the employee until it has been in the plan for two years unless the employee dies, retires or quits due to disability. Employees may obtain, in November of any year, a partial distribution of contributions made two years or twelve years before the year of the requested withdrawal. Such a withdrawal is apparently without penalty and for any reason. It would not include nonvested employer contributions. Further, the employee may choose to withdraw any vested amount at any other time subject to penalties for the withdrawal. If the employee withdraws the entire vested amount she is suspended from participation in the plan for a three month period and forfeits all of her employer's contributions for the year of the withdrawal and the two years prior to the withdrawal (*i.e.* the nonvested portion). Thus, in circumstances other than death, retirement or termination of employment due to disability, the employee has access to the vested funds at any time provided the employee is willing to suffer the penalties associated with early withdrawal. On the date the debtor's petition was filed this plan contained $6,376.64 which the debtor could have withdrawn less $1,100.00.

The ESOP is a stock bonus plan funded solely through employer contributions. Stock contributed prior to 1983 must be held in trust for seven years before it may be distributed to the employee (unless the employee dies or her employment is terminated). Stock contributed in 1983 or later may not be distributed unless the employee dies or her employment is terminated. At the time of filing the debtor had 24 shares in this plan worth $2,128.00. Of these, 19 shares were contributed prior to 1983 and of those, any shares contributed more than seven years before the filing date were free of the trust and subject to withdrawal by the debtor.

### ISSUES PRESENTED

The trustee contends that the two employee benefit plans, as of the date the petition was filed, are property of the estate under Section 541(a). The debtor and PNB contend that the benefits accrued under the plans are not property of the estate because Section 541(c)(2) excludes from the estate property which is subject to restrictions on transfer of a beneficial interest held in trust and enforceable under applicable nonbankruptcy law.

In the event that either plan, or any part of either plan, is deemed to be property of the estate, the debtor contends that she is entitled to exempt it under Section 522(d)(10)(E) as being a payment in the nature of future earnings necessary for her support. The trustee disputes this and contends that the plans do not qualify under that exemption and in any event are not necessary for the debtor's current or future support.

### DISCUSSION—PROPERTY OF THE ESTATE

#### A.

The Ninth Circuit in *In re Daniel,* 771 F.2d 1352 (9th Cir.1985) has addressed the meaning of 11 U.S.C. § 541(c)(2) which states:

> a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

*In re Daniel* holds that the phrase "applicable nonbankruptcy law" refers only to state spendthrift trust law. *Id.* at 1360. Consequently, the fact that the two plans contain nonassignment and nonalienation

restrictions so as to qualify under ERISA and IRC does not necessarily exclude the plans from the debtor's estate under Section 541(c)(2).

The issue thus arises as to whether a qualified ERISA plan may be examined under state spendthrift trust (nonbankruptcy) law and excluded from the estate if it qualifies as a spendthrift trust. As indicated, *In re Daniel* concluded that ERISA and IRC anti-alienation provisions do not create *federal* non-bankruptcy exclusions and endorsed the view of the Eleventh Circuit that "... ERISA-qualifying pension plans containing anti-alienation provisions are excluded pursuant to Section 541(c)(2) only if they are enforceable under state law as spendthrift trusts." *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir. 1985), as quoted in *In re Daniel*, 771 F.2d at 1360. Accord, *Matter of Goff*, 706 F.2d 574 (5th Cir.1983).

While it is true that Congress provided that ERISA provisions override state law, it also provided that ERISA does not "alter, amend, modify, invalidate, impair, or supersede any law of the United States ..." See 29 U.S.C. § 1144(a) and § 1144(d). Examination of an ERISA plan for validity under state spendthrift trust law is not an application of state law to an ERISA plan but rather the application of Federal bankruptcy law which mandates such an examination. In this District, the holding of *In re White*, 47 B.R. 410 (WD Wash.1985), which preceded *In re Daniel*, is not necessarily inconsistent with *In re Daniel*. In any event, since it was on appeal from the bankruptcy court it could only deal with the ruling of the court below which never reached the issue of the applicability of state spendthrift trust law since it held the trust was excluded from the estate by virtue of *federal* nonbankruptcy law.

It has also been held that Congress intended to effect a coherent scheme whereby retirement plans would be, without exception, included in the estate and considered solely as a matter of exemption under Section 522. See *In re Graham*, 726 F.2d 1268 (8th Cir.1984). However, a closer look at the Bankruptcy Code reveals a somewhat different scheme. The exclusion from the estate under Section 541(c)(2) is limited to a narrow group of plans which would be valid spendthrift trusts under state law. The exemption in Section 522(d)(10)(E) covers a far wider array of plans. Hence, inclusion of plans which meet state law spendthrift trust requirements within the effect of Section 541(c)(2) is in accord with the Congressional scheme. *Matter of Goff*, 706 F.2d at 587, *In re Lichstrahl, supra; In re Daniel, supra.* For a thoughtful discussion of this important issue see Rombauer, 3 Creditor-Debtor Law Newsletter, # 2 (1985) (Published by Washington State Bar Assn. Creditor-Debtor Law Section).

### B.

Therefore, the PNB plans must be examined under Washington State law to determine whether or not they would qualify as spendthrift trusts. If they are so qualified they are excluded from the estate under Section 541(c)(2).

Washington State law recognizes both express and statutory spendthrift trusts. See generally: *Spendthrift Trusts in Washington*, 58 Wash.L.Rev. 831 (1983). Express trusts are created through the intent of the settlor by the express language of the instrument creating the trust. "The essential idea ... is that the beneficiary cannot deprive himself of the right to future income under the trust." *Erickson v. Bank of California*, 97 Wash.2d 246, 250, 643 P.2d 670 (1982) quoting *Milner v. Outcalt*, 36 Wash.2d 720, 722, 219 P.2d 982 (1950).

Statutory spendthrift trusts are established by RCW 6.32.250. The property must be held in a trust that has been created by, or has proceeded from, a settlor other than the beneficiary. It has been held that this provision has the effect of clothing "... every active trust with statutory spendthrift provisions, at least insofar as attempts by creditors of a beneficiary to reach his interest by legal process are con-

cerned." *Seattle First Nat'l Bank v. Crosby*, 42 Wash. 234, 243, 254 P.2d 732 (1953). (The fact that the trust is created in consideration of services rendered by the employee does not make the employee the settlor. See 2 A. Scott, The Law of Trusts § 156 (3d ed. 1967) and cases cited therein.)

Where a valid spendthrift trust exists, only the portion of the trust which has accrued and is *ready for distribution* to the beneficiary is subject to seizure. *Knettle v. Knettle*, 197 Wash. 225, 84 P.2d 996 (1938). This Washington rule is contrary to the rule in most jurisdictions which does not allow a creditor to reach the beneficiary's interest until it is paid to the beneficiary. Restatement (Second) of Trusts § 152 comment h.

The fact that the trust restriction has an end-point does not destroy the spendthrift nature of the trust. In *Erickson v. Bank of California, supra*, the trust was set to expire some six months after the date the debtor filed a bankruptcy petition yet the spendthrift trust was valid for the remaining period and could not be reached by the bankruptcy trustee except in circumstances not relevant here.

■ The degree of control that the debtor may exercise over the trust assets is a crucial factor in determining the issue of inclusion in, or exclusion from, the bankruptcy estate. If the debtor's access to the funds is relatively unfettered, exclusion from the bankruptcy estate would create a temptation to shelter assets in a trust and withdraw them for personal use upon issuance of the bankruptcy discharge. *Matter of Goff*, 706 F.2d at 588. Limited control may be permitted if its exercise would create such hardship for the debtor as to discourage its exercise except in dire circumstances. See *Matter of Baviello*, 12 B.R. 412, 415 (Bankr.E.D.N.Y.1981); *In re Parker*, 473 F.Supp. 746 (W.D.N.Y.1979); *In re Wright*, 39 B.R. 623 (D.S.C.1983). Where the use of the funds would require that the debtor leave employment, become disabled or die it is clear that the funds retain their nature as future earnings rather than present savings. Such provisions

should not invalidate an otherwise valid spendthrift trust. The instant plans will be examined accordingly.

### C.

■ The Savings Plan is funded in part by the debtor/beneficiary herself and she may, subject to certain penalties, withdraw all vested amounts which includes all of her own contributions and all of her employer's contributions which have been in the plan for more than two years (*i.e.* the vested portion). This plan would not be an enforceable spendthrift trust under Washington law because it is funded mainly by the debtor/beneficiary and may be invaded as to most of the funds at any time and for any reason. This contravenes the above-stated requirements for both statutory and express spendthrift trusts. Since it would not be enforceable under Washington law it does not qualify for exclusion from the estate under Section 541(c)(2).

■ The ESOP is funded solely by the employer and the stock so held may be reached by the employee only under strictly limited circumstances. At the time of filing, shares contributed prior to 1983 and already held in trust for seven years could have been reached by the debtor. Other pre-1983 shares could not have been reached by the debtor until the seven year period expired. Those shares contributed after 1982 could not be reached except upon death or termination of employment. Thus, as of the date the debtor filed her petition, some portion of the shares contributed prior to 1983 were ready for distribution to the debtor without penalty.

The ESOP, as modified, is a spendthrift trust funded solely by the employer and subject to invasion only if triggered by certain drastic circumstances. Contributions made prior to 1983 as to which the seven year trust period still attached are also the subject of a valid spendthrift trust since the beneficiary could not reach them until the trust period expired. As to the stock contributed prior to 1983 which had passed beyond the seven year trust period,

and therefore was subject to disbursement to the beneficiary on demand, it was no longer protected by the spendthrift provisions of the trust.

Therefore, the ESOP is not property of the estate because it would be an enforceable spendthrift trust under Washington law. That portion, however, which was distributable at the time the petition was filed is property of the estate because the restriction on the beneficial interest no longer applied to it, and, as a matter of Washington law, Washington creditors could have reached it (absent the ERISA and IRC restraints) even though it was still held by the trustee. *Knettle, supra.*

### DISCUSSION—EXEMPTION UNDER § 522(d)(10)(E)

The issue remains as to whether or not the debtor may exempt under Section 522(d)(10)(E) the Savings Plan and the portions of the ESOP which are property of the estate. Section 522(d)(10)(E) provides in part:

> (d) The following property may be exempted under subsection (b)(1) of this section:
>
> (10) The debtor's right to receive
>
> (E) a payment under a stock bonus, pension, profit-sharing, annuity or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. . . .

With regard to this section of the code there are two issues. First, the subject payment must be a payment "under a stock, pension, profit-sharing, annuity or similar plan or contract" for the enumerated reasons. Second, the payment must be necessary for the support of the debtor and any dependent of the debtor. The trustee contends that these payments fail under the first criteria and in any event they are not necessary for the present support of the debtor. He contends that the court should not look at the debtor's future need. The debtor contends that these payments qualify under Section 522(d)(10)(E) and the court must look to present and future needs of the debtor to determine the applicability of the exemption.

The threshold inquiry involves whether or not the payments are payments under a "stock bonus, pension, profit-sharing, annuity or similar plan or contract" on account of the enumerated reasons.

#### A.

■ It must be recognized at the outset that the trustee, as the party objecting to the debtor's claim of exemption, has the burden of proof that the exemption is not properly taken. Bankruptcy Rule 4003(c). Moreover, the court is obliged to give a liberal construction of exemptions in favor of those who are benefited by them. *In re McQueen*, 21 B.R. 736 (Bankr.D.Vt.1982). This is consonant with the underlying purpose of chapter 7 which is to give the honest debtor "a new opportunity in life and a clear field for future effort unhampered by the pressure of preexisting debt." *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970).

#### B.

■ It appears from the legislative history that Section 522(d)(10)(E) is meant to protect "benefits akin to future earnings of the debtor." House Report No. 95–595, 95th Congress, 1st Sess. 362 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6318. Thus, the intent is "to insure that such benefits are available for retirement purposes or in the event of disability or termination of employment." *In re Sheridan*, 38 B.R. 52 (Bankr.D.Vt.1983).

Two cases are especially instructive. *In re Sheridan, Id.* and *In re Miller*, 33 B.R. 549 (Bankr.D.Minn.1983). Those cases look to the language of Section 522(d)(10)(E) and the above-quoted statement of legislative intent and hold that such payments are exempt where they are "akin to future earnings of the debtor." *In re Miller, Id.* at 552; *In re Sheridan, supra* at 56. Both cases characterize plans that limit the beneficiary's ability to obtain funds to certain drastic events (*e.g.* disability, death, retire-

ment or termination of employment) as being properly considered "stock-bonus, pension, profit-sharing, annuity or similar plans ..." under the code. The *Miller* court examines another plan from which the beneficiary could withdraw funds for a variety of other reasons and concludes that the fund is too easily invaded for the plan to qualify as exempt.

■ Thus, the qualification of a plan for exemption under Section 522(d)(10)(E) hinges in those cases upon the strictness of the restraints on withdrawal of funds for present, as opposed to future, needs. If a court is to make sense of the language of the Code and the legislative history, the approach of the *Miller* and *Sheridan* courts must be followed.

### C.

■ The Savings Plan allows the beneficiary to withdraw funds at any time subject to a penalty which basically consists of loss of the nonvested employer contributions and a three month suspension from participation in the plan. At the time the debtor filed she could have withdrawn all of her personal contributions for any reason. Where the plan provides for withdrawal of funds in circumstances other than death, retirement or termination of employment or disability, the court must determine whether those circumstances render the plan more "akin" to present savings than future earnings.

In *Miller* the court held that a profit-sharing plan could not be exempted under Section 522(d)(10)(E) because the debtor could withdraw funds for purchase of a primary residence, for capital improvement of a primary residence, for the college education of the employee or a dependent, for unreimbursed medical or dental expenses, or for relief of some other hardship. *Id.* at 550. The court held that the plan was really "akin" to a savings account. *Id.* at 551.

In the case at bar the Savings Plan is even more like present savings. The debtor may remove all vested portions at any time and for any reason if she is willing to sacrifice the nonvested portions and wait

three months before she can resume participation in the plan. Thus, this plan is really a present savings plan which may not be exempted under Section 522(d)(10)(E). The trustee is entitled to turnover under Section 542(a) of the portion the debtor could have reached as of the date the petition was filed.

It appears that the nonvested employer contributions would have been lost through penalty for early withdrawal and therefore the trustee is not entitled to turnover of the nonvested portion. PNB may retain for purposes of tax withholding any portion required by law to be withheld for that purpose subject to the right of the estate to any refund.

### D.

■ The ESOP has been held to be an enforceable spendthrift trust under Washington State law and therefore it is excluded from the estate under Section 541(c)(2). Ordinarily that would exclude the entire contents of the trust. In this case the trust underwent changes in 1983 and all of its contents are not subject to the same provisions. Therefore, those shares which the debtor could have reached on the date of filing are property of the estate since they were no longer protected by the seven year trust. Since they were available to the debtor at will on the date of filing they are not "akin" to future earnings but are more in the nature of presently available savings. The trustee is entitled to turnover of those shares under Section 542(a). None of the remaining shares, whether subject to the pre-1983 seven year restriction or the post-1982 restrictions, are property of the estate and therefore the trustee may not recover them.

### E.

PNB expressed in its briefs a concern that disqualification of their employee benefit plans would cause substantial hardship to PNB and related companies that contribute to the plans as well as to PNB employees who participate in the plans. Nothing

in this decision should affect the qualification of the plans under ERISA and IRC. This order does not require the employer to disburse to the trustee any portion of the plans which were not vested and fully available to the debtor had she chosen to withdraw her share immediately prior to the bankruptcy filing. PNB is not required to distribute any nonvested portions of the Savings Plan nor any of the ESOP stock which was subject to trust restrictions on the date the petition was filed.

The trustee is entitled to turnover of the debtor's interest in the Savings Plan and ESOP in accordance with the foregoing discussion. The parties should, upon notice, present a supplemental order setting forth the exact value of property to be transferred to the trustee.

IT IS SO ORDERED.