**In re Steven BRUCE and Paula Bruce, Debtors.**

**Bankruptcy No. 285–01100.**

United States Bankruptcy Court, C.D. Illinois.

Feb. 24, 1987.

Richard F. Kurth, Danville, Ill., for debtors.

James M. Mulvaney, Danville, Ill., for Ryder/P*I*E Nationwide.

Kenneth C. Meeker, Danville, Ill., trustee.

## OPINION

LARRY L. LESSEN, Chief Judge.

This matter is before the Court on the motion of Ryder/P*I*E Nationwide, Inc. (hereinafter referred to as P*I*E) [1] to vacate the Chapter 13 plan, or in the alternative a portion of the plan, confirmed by the Court on March 11, 1986. The facts are as follows.

Prior to his filing for relief under Chapter 13 of the Bankruptcy Code, the Debtor signed an agreement with P*I*E electing to participate in the Ryder/P*I*E Employee Stock Investment Plan (SIP). The SIP was established as a payroll-based employee stock ownership plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Sec. 1001 *et seq.* To participate, an employee must agree to accept a 15% reduction in wage or salary from the start of the program, October 7, 1985, through December 31, 1990. Participation is voluntary, but once the wage reduction is elected, the SIP provides that the election is irrevocable. In exchange for an employee's agreement to accept the wage reduction, the company agrees to invest this money in P*I*E stock for the employee. The SIP is designed to reduce operating costs and to provide capital for the company. It will also enable employees to acquire stock ownership in the company and to accumulate capital for their future economic security.

Steven Bruce signed a form electing to participate in the SIP in October, 1985. In December, 1985, the Debtors filed a Chapter 13 plan which provided: "The Debtors hereby reject the Ryder/P*I*E Employee Stock Investment Plan previously entered into by the Debtors." The Court confirmed the plan. The issue before the Court is whether the SIP is an executory contract which may be rejected by the Debtors in their Chapter 13 plan.

The relevant Code sections are 11 U.S.C. Sec. 1322(b)(7) and 11 U.S.C. Sec. 365(a). Section 1322(b)(7) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.

Section 365(a) provides in pertinent part:

... the trustee, subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

■ In support of its motion to vacate the plan P*I*E first argues that, pursuant to Rule 9014 of the Rules of Bankruptcy Procedure, the Debtors should have requested permission to reject the SIP by Motion. However, Bankruptcy Rule 6006 provides: "A proceeding to assume, reject, or assign an executory contract, ... *other than as part of a plan* is governed by Rule 9014." (emphasis added). When a contract is rejected as part of a Chapter 13 plan, Sec. 1322(b)(7) provides that the executory contract may be rejected in the plan itself. Since the Debtors rejected the SIP in their plan, they did not need to file a separate motion pursuant to Rule 9014. When a contract is rejected under Sec. 1322(b)(7), the debtors, as proponents of the plan, are the proper parties to reject the contract. The Chapter 13 trustee need not join in a motion to reject, even though Sec. 365 provides that "the trustee" may reject any executory contract of the debtor.

P*I*E also argues it did not receive notice of the Creditors' meeting pursuant to 11 U.S.C. Sec. 341 or of the confirmation hearing. P*I*E did not receive notice of the 341 meeting because it was not listed as a creditor in the Debtors' original schedules. However, on February 5, 1986, P*I*E was notified by this Court that the schedules had been amended and that it was now listed as a creditor. P*I*E was also sent a notice on that same date advising it of the time and place scheduled for the confirmation hearing. Since the Court

---

**1.** The Company was originally called Ryder Truck Lines, Inc. In July, 1983, Ryder merged with Pacific Intermountain Express, Co. and adopted its present name, Ryder/P*I*E Nationwide, Inc.

file clearly shows that notice of the confirmation hearing was sent to P*I*E, the Court finds its argument that it was not able to object to the plan before confirmation without merit. However, in light of P*I*E's allegation that the Debtors' schedules upon which their Chapter 13 plan is based do not reflect their interest in the SIP in any way, the Court will consider the merits of P*I*E's motion to vacate the plan.

The Court must first determine whether the SIP is an executory contract. The legislative history to Sec. 365(a) states:

> Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides.

H.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977) *reprinted in* U.S. Code Cong. & Admin. News 5963, 6303 (1978); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 58 (1978) *reprinted in* U.S. Code Cong. & Admin. News 5787, 5844 (1978). Another widely accepted definition of an executory contract is one "under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other". Countryman, "Executory Contracts in Bankruptcy: Part I," 47 Minn.L.Rev. 439, 460 (1973). *See, e.g., In re Murtishi,* 55 B.R. 564 (Bkrtcy.N.D.Ill.1985).

█  Under the SIP, the Debtor is required to work for 15% less than he was making before he entered the contract, and P*I*E is required to invest the 15% it saves on the Debtor's salary in P*I*E stock for the Debtor. In an affidavit submitted to the Court, Mr. Robert Crosby, who is Director–Human Resources, P*I*E Nationwide, Inc. and also Plan Administrator for the P*I*E Employee Stock Investment Plan, states that since the Debtor elected to participate in the SIP "his wages have been reduced in accordance with the Plan and he has been earning stock in the Company on a daily basis." Each day the Debtor works at the reduced wage, the amount by which his wage is reduced is invested in P*I*E stock by the company. No stock is earned unless or until the Debtor works, and only after the work is performed does the company credit him with stock. It is clear that performance remains due to some extent by both parties and the failure of either to complete performance would be a material breach excusing performance of the other. If the Debtor does not work, the company is not obligated to credit him with stock, and if the company ceased crediting the Debtor with stock, he would not be obligated to continue working at the reduced wage. Thus, the SIP is an executory contract, and Sec. 365 provides that the Debtor may reject *any* executory contract.

█  P*I*E argues that even if the Court finds the SIP is an executory contract, the Debtors should not be allowed to reject it because such a rejection would jeopardize the status of the entire plan for all employees under the terms of ERISA. In *In re Bastian Co., Inc.,* 45 B.R. 717 (Bkrtcy.W. D.N.Y.1985) the Court held that despite the termination procedures provided in ERISA, the Bankruptcy Code governs termination of pension plans of employers in bankruptcy, and that the pension plan of a Chapter 11 debtor/employer is an executory contract rejectable in bankruptcy under the terms of Sec. 365. The Court based its holding upon Sec. 514(d) of ERISA which provides:

> Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of the United States prohibited. Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in Section 111 (29 USCS Sec. 1031) and 507(b) (29 USCS Sec. 1137(b)) or any rule or regulation issued under any such law.

In *In re Di Piazza,* 29 B.R. 916 (Bkrtcy. N.D.Ill.1983) the Court held that to the extent the provisions of the Bankruptcy Code and ERISA conflict regarding whether pension benefits become property of a Chapter 13 estate, the Bankruptcy Code controls. The Court also held that an order

by a Bankruptcy Court directing a pension plan to turn over the Debtor's vested interest in an ERISA plan to a trustee would not disqualify the entire plan from receiving favorable tax treatment pursuant to Internal Revenue Code Sec. 401(a)(13). *Id.* at 923. The case at bar is analogous to the cases cited above in that Sec. 1144(d) prevents ERISA from impairing the provisions of the Bankruptcy Code which allow a debtor to reject any executory contract. If this Court allowed the Debtor to reject the SIP, such an order would not jeopardize the tax deferred status of the entire plan, just as the Court's order in *Di Piazza* did not disqualify the entire plan from a favorable tax treatment.

While any executory contract may be rejected under Sec. 365, that decision is still subject to Court approval under the business judgment rule. *In re Chi–Feng Huang*, 23 B.R. 798 (Bkrtcy.App.1982). The primary issue for the Court to consider is whether rejection will benefit the general unsecured creditors. *Id.* at 801. If rejection will not result in unsecured creditors receiving a greater amount on their claims, the Court may disapprove rejection. *Id., In re Meehan*, 46 B.R. 96, 101 (Bkrtcy.E.D. N.Y.1985).

The Debtor's schedules show his income at the 15% reduced rate, and nowhere does the Debtor list the stock he is acquiring through the SIP as an asset. Therefore, P*I*E claims that the Debtor's rejection of the SIP was merely an afterthought, added to his plan after it had been established based on the Debtor's income at the 15% reduced rate. Since there are no specific dollar amounts as to income or expenses in the plan itself, P*I*E's argument is based upon the dollar amounts listed in the schedules.

In his schedules the Debtor does list his pay at the 15% reduced rate. After taxes, the schedules show Mr. Bruce's monthly take home pay to be $1,300.00, with his wife's monthly take home pay at $600, for total monthly income of $1,900.00. Their expenses are listed as $1,631.00 per month, leaving them $269.00 per month disposable income. Their plan provides for $250 per

month to be paid to the Chapter 13 trustee. Thus, the schedules would seem to indicate that the 15% increase in income the Debtor will receive as a result of rejecting the SIP would merely be a "cushion" for the benefit of the Debtors only, not income necessary to fund their plan.

Therefore, it was agreed between the parties at a hearing held on July 21st that the Debtors' attorney would submit in letter form to the Court the figures upon which the plan was based. He has submitted those figures to the Court showing that the Debtors' take home pay has dropped to $1,200.00 per month and that his wife's has dropped to $530.00 per month, for a total monthly income of $1,730.00. Their monthly expenses have increased from $1,631.00 listed on their schedules to $1,706.30. The increase reflects three expenses that were not listed on the schedules: Marjorie's Tuition $27.50, Holly's Lunch at School $20, and Uniforms for Work $28.00. These expenses should have been listed on the original schedules, but the Court believes they were not listed through inadvertence rather than through any intent to defraud creditors, and that the expenses are legitimate. Subtracting monthly expenses of $1,706.30 from monthly take home pay of $1,730.00, leaves the Debtors only $23.70 per month with which to fund their plan. The Debtors' attorney states that the Debtors cannot pay their monthly living expenses if both the $250.00 per month to pay the trustee and the 15% of the Debtor's wages used to purchase stock under the SIP are deducted from his pay each month.

Accepting the above figures as an accurate representation of the Debtors' income and expenses, it is clear that the money being deducted from the Debtor's pay to fund the SIP is necessary for the Debtor to be able to fund his Chapter 13 plan and that the unsecured creditors will benefit from the rejection. In *In re Festner*, 54 B.R. 532 (Bkrtcy.E.D.N.C.1985) the Court refused to confirm a Chapter 13 plan where the Debtor wanted to continue payroll deductions of $25.00 per week for voluntary retirement benefits, of $22.00 per week to purchase company stock, and of $85.00 per

month to satisfy a loan from the credit union secured by nineteen shares of company stock she had already acquired. The Court stated:

> These expenditures are desirable from the Debtor's standpoint, but they are certainly not necessary. Additional pension plans and stock purchases may be a wise investment which enhance an individual's financial security, but the Debtor is not entitled to acquire them at the expense of unpaid creditors.

*Id.* at 533. Similarly, if the Debtors here did not seek to reject the SIP, their plan might be unconfirmable, since they would, in effect, be saving money for their future that could otherwise be used in their Chapter 13 plan at present.

P*I*E finally argues that the SIP is not property of the estate, and thus the Bankruptcy Court has no jurisdiction to alter the contract. In *In re Pettit*, 61 B.R. 341 (Bkrtcy.W.D.Wash.1986) the Court held that the portion of an Employee Stock Option Plan (ESOP) that qualified as a spendthrift trust under applicable non-bankruptcy law was not property of the estate under 11 U.S.C. Sec. 541(c)(2), and thus the Court had no jurisdiction over it. The portion of the ESOP that qualified as a spendthrift trust was funded solely through employer contributions, and stock holdings could be withdrawn by the debtor only under strictly defined circumstances such as death, disability, or termination of employment. However, the portion of the funds in the plan that the debtor could withdraw at the time of filing bankruptcy was property of the estate to which the trustee was entitled. P*I*E argues that its SIP is funded solely by the employer and that the Debtor has no right to reach the funds except upon death, disability, or termination of employment, so the SIP would also qualify as a spendthrift trust under Illinois law. Ill.Rev.Stat. Ch. 110, para. 2–1403 (1985). Thus the Court would have no jurisdiction over the SIP.

While the funds already contributed to the SIP in this case cannot be readily reached by the Debtor, the SIP does not qualify as a spendthrift trust, because it is in reality funded by the employee, not by the employer. P*I*E states the plan is funded solely through its contributions. Once the Debtor agreed to the wage reduction, he had no further right to this 15%. The Debtor's wages did not remain constant with him merely contributing 15% of each paycheck to the plan. Rather the contributions are made solely by the employer, in an amount that equals 15% of the Debtor's former salary.

This argument exalts form over substance. The Debtor has reduced his wage only upon the condition that the amount by which his wage is reduced is put into the SIP for his future benefit. P*I*E's own plan administrator states in his affidavit that the Debtor earns stock "on a daily basis" as he works. The plan administrator also states the SIP was established "as a payroll-based" plan that "results in a deferral of income by the employee." These terms indicate that it is the Debtor's own income based upon his own paycheck that is funding the SIP. Regardless of the form of the transaction, the substance is that the Debtor is funding this plan, not the employer.

In *Pettit* the debtor did not agree to a wage reduction so that part of his salary could be diverted into the ESOP. The debtor's salary remained constant and the employer funded the plan without using the debtor's wages in any way. Another important distinction is that in *Pettit* the issue was whether funds already put into the ESOP were property of the estate that could be reached by the trustee. That is not the same issue as whether the Debtor in this case can reject the executory contract by which the funds the SIP for his future benefit at the expense of his present creditors. Similarly, in the cases cited by P*I*E regarding the enforceability of spendthrift trusts in Illinois, *Christ Hospital v. Greenwald*, 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1980) and *Peoples Finance Co. v. Saffold*, 83 Ill.App.3d 120, 38 Ill.Dec. 534, 403 N.E.2d 765 (1980), the Courts held that monthly pension benefits payable under a pension plan that qualified as a spendthrift trust were not subject to garnishment. A debtor's right to re-

ceive such payments is clearly distinguishable from a debtor's right to stop funding a plan from which he is currently receiving no payments. The Court notes that the shares already earned by the Debtor should have been listed on his schedules as an asset, and the Debtor should amend his schedules to so reflect his interest in the SIP. However, the issue before the Court on P*I*E's motion to vacate the plan is not whether proceeds already in the SIP are an asset of the estate, nor whether payments made to the Debtor under the SIP are exempt, but whether the Debtor must continue to fund this SIP with 15% of his wages. The Court holds that he need not do so.

In summary, the Court finds that the SIP is an executory contract that may be rejected by the Debtors in their Chapter 13 plan. Since the SIP is funded by employee rather than by employer contributions, it does not qualify as a spendthrift trust. Thus it is property of the estate over which the Court has jurisdiction. Based upon the Debtors' present income and expenses, the 15% of the Debtor's salary he had agreed to allow his employer to put into the SIP for his future benefit is now needed to pay his present creditors. Unsecured creditors will benefit by rejection, for without this 15% of his salary, the Debtors' Chapter 13 plan will not be successful.

Section 1330 of the Bankruptcy Code provides that an order of confirmation may be revoked if such order was procured by fraud. While the Debtors' income and expenses have changed somewhat from the figures listed in their schedules, the Court does not find that confirmation of the plan wherein the Debtors reject the SIP and propose to pay $250 per month to the trustee was procured by fraud. The Court does not believe that the Chapter 13 plan was filed merely as a device to allow the Debtor to reject the SIP, but that it was filed because the Debtors are suffering legitimate financial hardship.

For the foregoing reasons P*I*E's motion to vacate the plan is DENIED.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.