**In re Richard HYSICK a/k/a Richard Dennis Hysick, Debtor.**

**Bankruptcy No. 87–00566T.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 28, 1988.

David B. Schwartz, Allentown, Pa. for debtor.

M. Kevin Coffey, Bingaman, Hess, Coblentz & Bell, Reading, Pa., for Meridian Bank.

Allan B. Goodman, Bethlehem, Pa. trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Creditor Meridian Bank ("Meridian") has filed an objection to an exemption in a pension fund claimed by debtor Richard Hysick ("debtor") pursuant to 11 U.S.C. § 522(d)(10)(E). Based upon the following analysis, we find that this pension fund constitutes a valid spendthrift trust under state law, and that this is excluded from property of the estate. Meridian's objection to the exemption is moot.

### I. *Factual Background*

Debtor, a 33 year old individual, claimed an exemption in $12,102.65 held in a pension fund of which Meridian Asset Management, a subsidiary of Meridian Bank, is custodian. Debtor's employer has adopted a pre-approved "Standardized Master Money Purchase Pension Plan" ("Plan") initially developed by Meridian. The parties stipulate that this is a federally qualified plan approved under § 401(a) of the Internal Revenue Code ("I.R.C.")[1] and that debtor is 100% vested.

The Plan provides that an employee's funds will be distributed at the later of his (1) attaining 59½ years of age, or (2) the date on which he terminates service. Plan, § 6.01. The Standardized Master Money Purchase Pension Plan Adoption Agreement ("Plan Adoption Agreement") provides that prior to terminating his service with his employer, or attaining the "normal retirement age" of 59½ years, Art. § 5.01, a participant "(s)hall not have any election

---

**1.** I.R.C. § 401(a) identifies the characteristics of a qualified trust, which is entitled to the unique tax and income benefits associated with such a characterization. 26 U.S.C. § 401(a).

right to receive his Accrued Benefit derived from Employer contributions." Art. § 6.03. Employees who terminate service due to death or disability prior to attaining 59½ years of age may receive distribution of their nonforfeitable accrued benefits. Plan, § 5.03. Additionally, the Plan can make loans to participants such as debtor who are not owner-employees or shareholder-employees. Plan, § 10.03[B](e).

The assignment and alienation provisions of a plan are central factors in determining whether pension funds are excluded from the bankruptcy estate, 11 U.S.C. § 541(c)(2), or, if not, whether they can be exempted under 11 U.S.C. § 522(d)(10)(E). The Plan covering this debtor provides:

> § 8.05  ASSIGNMENT OR ALIENATION.
>
> Subject to Code § 414(p) relating to qualified domestic relations orders, neither a Participant nor a Beneficiary shall anticipate, assign or alienate (either at law or in equity) any benefit provided under the Plan, and the custodian/trustee shall not recognize any such anticipation, assignment or alienation. Furthermore, a benefit under the Plan is not subject to attachment, garnishment, levy, execution or other légal or equitable process.

Plan, § 8.05.

The parties agree that the two questions that we must resolve are (1) whether the debtor's interest in a qualified pension plan ("plan") constitutes property of the bankruptcy estate under 11 U.S.C. §§ 541(a) and (c)(2), and, if so, (2) whether the debtor's interest in such a plan is exempt under 11 U.S.C. § 522(d)(10)(E).

## II. *Property of the Estate*

■ The filing of a bankruptcy petition creates an estate comprised of all of the debtor's legal or equitable interests as of the commencement of the case. 11 U.S.C. § 541(a). The Code carves out an exception for certain property held in trust: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable nonbankruptcy law* is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (emphasis added).

Meridian points to one court which glosses over this phrase by stating that since § 522(d)(10)(E) allows *exemption* of pension funds, they must necessarily be property of the estate. *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984). *See also, Regan v. Ross*, 691 F.2d 81, 86 (2d Cir.1982). There is no doubt that *Graham* has been given this reading. *See McLean v. Central State*, 762 F.2d 1204 (4th Cir. 1985). We think that this is too restrictive an interpretation. Even though *Graham* raises this argument, the *Graham* court goes on to say that state spendthrift trust law is the "applicable non-bankruptcy law" discussed in § 541(c)(2). Then, without even analyzing the relevant state law, they make a quantum leap to conclude that these funds must come into the estate. We find far more logical the analysis of those courts which carefully scrutinize the term "applicable nonbankruptcy law" and then actually *apply* that law. *See e.g., Goff v. Taylor (In re Goff)*, 706 F.2d 574, 586–89 (5th Cir.1983); *McLean v. Central State*, 762 F.2d 1204, 1208. Only a careful analysis of the "applicable nonbankruptcy law" can test whether property is actually included in an estate.

A threshold issue not confronted directly by either of the parties is the scope of the term "applicable nonbankruptcy law." The majority view is that it is state spendthrift trust law that is the "applicable nonbankruptcy law" to which 11 U.S.C. § 541(c)(2) refers. Thus, this case may turn on whether the Plan creates a spendthrift trust enforceable under Pennsylvania law. Two opinions from within our Circuit adopt this approach. *White v. Babo (In re Babo)*, 81 B.R. 389, 391 (Bankr.W.D.Pa.1988) (the "bulk of authority" holds that the reference is to state spendthrift law); *B.K. Medical Systems, Inc. v. Roberts (In re Roberts)*, 81 B.R. 354, 374 (Bankr. W.D. Pa. 1988).

A minority view is that this phrase refers to the Employment Retirement Income Se-

curity Act of 1974 ("ERISA").[2] In order to qualify for the specialized treatment afforded ERISA qualified plans, a plan must contain specific restraints on assignment and alienation.[3] Thus, a court espousing this view would conclude that if a plan is an enforceable, ERISA-qualified plan, the restraints on assignment and alienation contained therein would survive and be enforceable during the bankruptcy, preventing the property from ever becoming part of the estate. This view has not yet been adopted within our circuit.

An extreme minority view has been adopted by one court within our circuit which suggests that the phrase "applicable non-bankruptcy law" refers to *all* applicable law that might normally apply outside of a bankruptcy setting, including ERISA. *Liscinski v. Mosley (In re Mosley)*, 42 B.R. 181, 191, 11 C.B.C.2d 85 (Bankr.D.N.J. 1984).

Our Circuit Court has not yet spoken on the issue. In the key Third Circuit opinion in this area, the parties conceded that the pension was property of the estate. *In re Clark*, 711 F.2d 21 (3d Cir.1983). Thus, while *Clark* may be significant in determining the scope of the 11 U.S.C. § 522(d)(10)(E) exemption, it is not relevant in determining the scope of the 11 U.S.C. § 541(c)(2) exclusion.

We follow those courts that interpret "applicable nonbankruptcy law" to mean state spendthrift trust law. We cannot use the plain meaning rule to review this statute because the addition of the term "applicable" creates ambiguity as to the meaning of the phrase "nonbankruptcy law." *Cf. In re Pruitt*, 30 B.R. 330, 331, 8 C.B.C.2d 912, 10 B.C.D. 760, Bankr.L.Rep. ¶ 69,355 (Bankr.D.Colo.1983). Congress' intent thus becomes a determinative factor, and we agree with those courts that have found evidence that Congress intended that this phrase refer to state law.[4] *See e.g., Daniel v. Security Pacific Nat'l. Bank (In re Daniel)*, 771 F.2d 1352, 1359–60 (9th Cir. 1985), *cert. den.* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed. 313 (1986); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488, 1490 (11th Cir.1985); *In re Graham*, 726 F.2d 1268, 1271–72; *Goff v. Taylor (In re Goff)*, 706 F.2d 574, 581–87 (5th Cir. 1983); *In re Roberts*, 81 B.R. 354, 374. Indeed, all of the Circuit Courts to have considered this question have reached this conclusion.[5]

Our decision to apply state spendthrift trust law does not in any way prejudice participants in ERISA–qualified plans.

**2.** P.L. No. 93–406, 88 Stat. 898, codified at 29 U.S.C. § 1001–1144, and in certain non-consecutive sections of the I.R.C.

**3.** Section 401(a) of the I.R.C. provides:
  (13) Assignment and alienation.—
    (A) In general.—A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 20 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975(d)(1). This paragraph shall take effect on January 1, 1976, and shall not apply to assigments which were irrevocable on September 2, 1974.
  26 U.S.C. § 401(a)(13)(A). Section 401(a)(13)(B) provides special rules for domestic relations orders which would not be applicable in the instant case.

**4.** We see no reason to reinvent the wheel. Excellent analysis of Congressional intent can be found in all of these Circuit court opinions.

**5.** One other court of appeals has considered this issue. *Regan v. Ross (In re Regan)*, 691 F.2d 81 (2d. Cir.1982). The question in *Regan* was whether New York retirement law prevented state pension benefits from becoming property of the chapter 13 estate. The court rejected the argument that the pensions were spendthrift in form and thus not property of the estate under 11 U.S.C. § 541(c)(2). *Id.* at 85. They also rejected the argument that allowing the payments would serve to disqualify the plans under 26 U.S.C. § 401(a)(13), thus subjecting the plans to possible loss of tax benefits. *Id.* at 86. *Regan* does not directly address the meaning of the term "applicable nonbankruptcy law."

ERISA–qualified funds not excluded under 11 U.S.C. § 541(c)(2) can still be exempted if they meet the criteria outlined in 11 U.S.C. § 522(d)(10)(E).

■ Similarly, our decision to apply state spendthrift trust law is not inconsistent with 29 U.S.C. § 1144(d), which provides that ERISA preempts state law.[6] This is not an application of state law to an ERISA plan, but rather an application of federal bankruptcy law, which happens to mandate use of state spendthrift trust law. *In re Pettit*, 61 B.R. 341, 345, 14 C.B.C.2d 1111 (Bankr.W.D.Wash.1986).

Lacking precedent from our own district or appellate court, we agree with the district court for the Western District of Pennsylvania that " ... an ERISA qualified pension plan containing provisions prohibiting alienation and assignment is excluded from the estate only if said plan constitutes a spendthrift trust under Pennsylvania law." *In re Roberts*, 81 B.R. 354, 374. Thus, an ERISA-qualified plan might not qualify as a valid spendthrift trust under state law. *See e.g., In re Lichstrahl*, 750 F.2d 1488, 1490.[7]

■ Under Pennsylvania law, a spendthrift trust exists where the trust contains an express provision prohibiting anticipatory alienations and attachments by creditors. *Wilson v. U.S.*, 372 F.2d 232, 234 (3d Cir.1967), *citing In re Keelers Estate*, 334 Pa. 225, 229, 3 A.2d 413, 415 (1939). Spendthrift trusts are not enforceable, however, when the enforcement would be contrary to public policy. The Pennsylvania Supreme Court has ruled that it violates public policy for a person to create a trust to benefit himself, which serves to vest him with the beneficial incidents of ownership while placing assets beyond the reach of his creditors. *In re Mogride's Estate*, 342 Pa. 308, 311, 20 A.2d 307, 309 (1941).

Thus, the question is not whether the instant plan contains provisions restraining alienation, which it does, but the manner and degree in which debtor's access is limited. If the anti-alienation provisions are enforceable against general creditors, they are enforceable against a trustee in a turn-over action or against a creditor such as Meridian which is attempting to pull pension funds into an estate. The case law, however, is extremely ambiguous as to *how* a court should determine whether these provisions are enforceable against general creditors. It is not surprising that these bankruptcy cases do not attempt to dissect and analogize the state law spendthrift trust cases. There are few such state cases and they rarely touch on the sophisticated type of restrictions found in ERISA-qualified plans.

---

6. This section provides:
   (d) Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of United States prohibited.
   Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.
   29 U.S.C. § 1144(d). The exceptions in section 1031, dealing with repeal of the Welfare and Pension Plans Disclosure Act, and section 1137(b), dealing with administration, are inapplicable in the instant case.

7. We think that this conclusion is particularly appropriate because the Internal Revenue Service sends to Applicants who request plan approval a letter approving the form of the plan. The letter sent in the instant case to Meridian recites in relevant part:
   ... In our opinion, the form of the plan ... is acceptable under section 401 ... This opinion relates only to the acceptability of the form of the plan under the Internal Revenue Code. It is not an opinion of the effect of other Federal or local statutes ... Our opinion on the acceptability of the form of the plan is not a ruling or determination as to whether an employer's plan qualifies under Code section 401(a). An employer who adopts this plan will be considered to have a plan qualified under Code section 401(a) provided all the terms of the plan are followed ...

Trial Exh. M–3, August 15, 1985 letter from the Internal Revenue Service to Meridian Trust Co. This letter suggests the obvious: a plan may loose its status as a qualified plan if the provisions of the Code and the plan are not followed. Thus, even if a plan initially qualifies under ERISA, at the time of a trial on the issue of exemptibility it may not qualify, and thus it may not be excludable either under ERISA or under state spendthrift trust law.

As a result, bankruptcy courts evaluating the spendthrift nature of pension plans look at a variety of factors. A major factor in an assessment of the debtor's ability to access his pension funds is the self-settled nature of the plan—whether the plan was created by an employer and covers the employee-debtor ("employer-created" plan), or whether the plan was created by the employer-debtor ("self-settled" plan). Thus, even though a self-settled plan prohibits assignment and alienation by the debtor,

> ... his interest in the plan as the controlling officer and sole director of his settlor/professional corporation, and his additional position as Trustee of the *res*, gave him absolute dominion and control over the pension plan and fund. This is precisely the type of fraudulent activity contemplated and arrested by the Pennsylvania Supreme Court in *Mackason's Appeal, supra*. [42 Pa. 330 (1862)] Several other federal courts have made similar determinations; *see In Re Lichstrahl, supra;* (Florida); *Matter of Goff,* 706 F.2d 574 (5th Cir.1983); *In re Graham,* 24 B.R. 305 (Bankr.N.D.Iowa), *aff'd.,* 726 F.2d 1268 (8th Cir.1984); *In re Brackett,* 54 B.R. 57 (Bankr.D.N.M. 1985); *In re O'Brien,* 50 B.R. 67 (Bankr. E.D.Va.1985); *In re Clark,* 18 B.R. 824 (Bankr.E.D.Tenn.1982).

*In re Roberts,* 81 B.R. 354, 375. *See also, Bentz v. Sawdy (In re Bentz),* 49 B.R. 383, 385, 12 C.B.C.2d 1143, 13 B.C.D. 140 (Bankr.W.D.Pa.1985).

We disagree with debtor's conclusion that Judge Becker's concurrence in *Clark* requires that we make the self-settled nature of the trust the *sine qua non* of our analysis. Judge Becker concludes that:

> (t)he majority's holding will not affect employee pension and annuity plans created by employers, because the assets of such plans would not be included in the debtor's estate under section 541, and thus cannot be reached by the trustee.

*In re Clark,* 711 F.2d 21, 24 (Becker, J., concurring). With all due respect, this is an unduly broad interpretation since the majority holding does not even address the question of what funds constitute property of the estate. We do not dispute that courts normally find that the restrictions in self-settled plans are insufficient to create trusts protected under state spendthrift trust laws, while similar provisions in employer-created plans are normally effective to do so. *In re Goff,* 706 F.2d 574, 589 and n. 41. As the *Goff* court noted, "the traditional law of spendthrift trusts has rejected the notion of effective spendthrift provisions in self-settled trusts." *Id.* at 589. In the instant case, we are dealing with an employer-created plan, and none of the cases cited by Meridian can be read for the proposition that such plans are *always* excluded from the estate. Thus, the self-settled/employer-created distinction is not always a clear guide to evaluating these plans.

Another important factor is the amount of overt control that a debtor can exercise under the terms of the plan. As one court explained,

> The degree of control that the debtor may exercise over the trust assets is a crucial factor in determining the issue of inclusion in, or exclusion from, the bankruptcy estate. If the debtor's access to the funds is relatively unfettered, exclusion from the bankruptcy estate would create a temptation to shelter assets in a trust and withdraw them for personal use upon issuance of the bankruptcy discharge. *Matter of Goff,* 706 F.2d at 588. Limited control may be permitted if its exercise would create such hardship for the debtor as to discourage its exercise except in dire circumstances. See *Matter of Baviello,* 12 B.R. 412, 415 (Bankr. E.D.N.Y.1981); *In re Parker,* 473 F.Supp. 746 (W.D.N.Y.1979); *In re Wright,* 39 B.R. 623 (D.S.C.1983). Where the use of the funds would require that the debtor leave employment, become disabled or die it is clear that the funds retain their nature as future earnings rather than present savings. Such provisions should not invalidate an otherwise valid spendthrift trust. The instant plans will be examined accordingly.

*In re Pettit,* 61 B.R. 341, 346. The *Pettit* court found that debtor's savings plan,

which permitted her to withdraw vested sums, was not a valid spendthrift trust since it permitted her to invade it at any time. *Id.* Her Employee Stock Option Plan permitted her free access to pre–1983 stock contributions, but severely circumscribed access to post–1983 contributions by providing access only upon death or termination of employment. *Id.* The court held that the pre–1983 contributions did not have the characteristics of a protected spendthrift trust, but that the post–1983 contributions were protected. *Id.* at 347.

Another court found that a debtor who "... alone enjoys the authority to act, whether as an agent of the settlor or in his own rights as trustee and beneficiary ..." enjoys "absolute dominion" over the funds, so that the court must look beyond the legal form of the trust. *In re Lichstrahl,* 750 F.2d 1488, 1490. The court held that the plans were not valid spendthrift trusts. A similar lack of dominion or control caused another court to hold that a fund in which a debtor held no present right to a benefit qualified as a spendthrift trust. *In re Richardson,* 75 B.R. 601, 17 C.B.C.2d 443 (Bankr.E.D.Ill.1988).

A plan which permitted limited withdrawals of employee contributions if the debtor and his family needed funds to "meet special financial needs," such as the purchase of a new home or the college education of a child, was held insufficient to create a spendthrift trust under Pennsylvania law. *In re Babo,* 81 B.R. 389, 391.

Debtor Hysick's Plan provides relatively standard prohibitions against distribution prior to death or termination of employment. We have no doubt that such provisions, taken alone, would provide sufficient restrictions on his access to create a valid spendthrift trust. But the distinguishing feature of this Plan is the inclusion of a provision allowing debtor to take a loan from Plan funds.[8] Plan, § 10.03(b)(e).

After reviewing the terms of the instant plan, we find that the loan provision does not imbue the debtor with control or dominion sufficient to destroy the spendthrift

characteristics of this trust arrangement. The Plan describes the power to loan as the power:

> (e) To borrow money, to assume indebtedness, extend mortgages and encumber by mortgage or pledge; to invest in loans on a nondiscriminatory basis to a Participant (other than to an Owner–Employee or to a shareholder-employee (an employee or officer) who, at any time during the Employer's taxable year, owns more than five percent (5%), either directly or by attribution under Code § 318(a)(1), of the outstanding stock in an Employer which is a Subchapter S corporation) all in accordance with the written direction of the Named Fiduciary, provided the Named Fiduciary confirms in writing the loan is adequately secured, bears a reasonable rate of interest, provides for repayment within a specified time, prohibits offset of the Participant's Nonforfeitable Accrued Benefit for loan default prior to the time the Custodian otherwise would distribute the Participant's Nonforfeitable Accrued Benefit, does not exceed (at the time the Plan extends the loan) the present value of the Participant's Nonforfeitable Accrued Benefit, otherwise conforms to the exemption provided by Code § 4975(d)(1), and, the Participant's spouse, if any, consents (in a manner described in Section 6.05 other than the requirement relating to the consent of a subsequent spouse) to the use of any portion of the Participant's Accrued Benefit as security, or (by separate consent) as an increase in the amount of security, for a Participant loan, within the ninety (90) day period ending on the date the Participant pledges any portion of his Accrued Benefit for a Participant loan.

Plan § 10[B](e). Meridian, the custodian, may exercise this power to loan "... solely as custodian in accordance with the written direction of the Named Fiduciary." Plan, § 10[B]. Thus, it is the "Named Fiduciary" who has the power to direct Meridian to make a loan to the debtor.

---

8. This power to make loans was also a feature in the *Graham* plan, but it was not an enunciated factor in that court's decision. *In re Graham,* 726 F.2d 1268, 1273.

The parties have not identified for us the "Named Fiduciary." The Plan provides that unless the Employer designates in writing to the Custodian the name of another person, the Employer is the "Named Fiduciary." Plan, § 10.04[D]. Thus, two possibilities exist. Either debtor's employer is the "Named Fiduciary" capable of accessing funds for debtor through this loan power, or some other person has been designated to assume that role. It is even possible that the Employer, in this case debtor's brother, designated debtor as the "Named Fiduciary." In such a case, we would have no trouble finding that debtor had unfettered access to the funds, destroying the spendthrift nature of this trust. If debtor's brother—his employer—held that power, it might be possible to pierce the corporate veil and to argue that the family connection provided debtor with virtually free access to the funds. But Meridian bears the burden of proof on this issue, N.B.R. 4003(c), and we have been presented with no proof that the Named Fiduciary is anyone other than debtor's employer. Additionally, we have been presented with no solid proof that the provisions of *this* Plan have been utilized in a manner that would destroy the spendthrift characteristics of this Plan. To the contrary, the parties do not dispute that debtor has not received any loaned funds from the Plan.

Meridian has not proven that Debtor has the power to exercise any significant dominion or control over the funds in his Plan. We conclude that this Plan would constitute a valid spendthrift trust under state law, and thus would not be included in this estate.

An appropriate order follows.

### ORDER

AND NOW, this 28th day of September, 1988, Meridian's objection to debtor's exemption is mooted in light of our holding that the pension funds are not property of the estate, and debtor is granted twenty (20) days within which to amend its schedule B–4 claim of exemption.