In re Robert J. **BABO** and Arlene L. Babo, His Wife, Debtors.

Vedder J. **WHITE**, Esq.,
Trustee, Plaintiff,

v.

Robert J. **BABO** and Hammermill Thrift Plan Trust, Defendants.

Bankruptcy No. 85–00448E.
Adv. No. 86–0015.

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 20, 1988.

Vedder J. White, Erie, Pa., Trustee.

John P. Kreis, Pittsburgh, Pa., for Hammermill Thrift Plan.

Michael S. Janjanin, Erie, Pa., for Babo.

## OPINION AND ORDER

WARREN W. BENTZ, Bankruptcy Judge.

### Case Summary

The debtor is a 55 year old male currently employed by Hammermill Paper Company, Inc. ("Hammermill") as a supervisor at a salary of approximately $32,500 per year. He has been employed by Hammermill since January 11, 1952 and has an interest in a pension plan consisting of employee and employer contributions as well as certain stock contributions.

This plan, the Hammermill Thrift Plan ("Plan"), was created by Hammermill on February 23, 1976 and is a pension plan as defined under § 3(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan was created to qualify under § 401(a) of the Internal Revenue Code and, in fact, so qualified as evidenced by an Internal Revenue Service's determination letter. As a prerequisite to the qualification, the Plan contained an anti-alienation provision as required by § 401(a)(13) of the Internal Revenue Code.[1]

This dispute arose shortly after the debtors had filed their Chapter 7 petition on November 13, 1985. After the trustee's request to withdraw the debtor's funds for purposes of administration under the Bankruptcy Code was denied, the trustee filed a turnover complaint on February 20, 1986. The complaint alleges that Hammermill refuses to turn over monies held in the Plan which were rightfully property of the debtor's estate under § 541(c) because Pennsyl-

---

1. § 17.10 of the Plan provides:
   Benefits payable under this Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary,

vania law would not recognize the Plan as a valid spendthrift trust.

Hammermill contends in the first instance that its trust is a qualified pension plan under the Internal Revenue Code and ERISA and that therefore the trust's spendthrift provisions are valid. In the alternative, Hammermill asserts that the spendthrift provisions are valid even if the Internal Revenue Code and ERISA are not the applicable nonbankruptcy law intended by § 541(c) because the spendthrift provisions are valid under Pennsylvania law.

The debtor essentially echoes the arguments of Hammermill insofar as they pertain to the issue of whether the debtor's interest in the trust is property of the estate. The debtor additionally posits that even if this court concludes that the debtor's interest in the Plan is property of the estate, the debtor's interest therein is exemptible under § 522(d)(10)(E) as an interest in a pension reasonably necessary for the support of the debtor and his wife.

The parties have submitted the matter for disposition by summary judgment pursuant to Bankruptcy Rule 7056. We have reviewed the merits and are unable to make a final disposition of this matter. Therefore, under subsection (d) of the Rule, a hearing will be scheduled to ascertain the material facts needed to render a final dispositive order consistent with this opinion.

### Discussion

A. *Whether the debtor's interest in the thrift plan is property of the estate.*

Section 541(c) provides:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument or applicable nonbankruptcy law—

---

prior to actually being received by the person entitled to the benefit under the terms of the Plan ... and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right to benefits payable hereunder shall be void.

(A) that restricts or conditions transfer of such interest by the debtor ...

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The question is whether the reference to applicable nonbankruptcy law in § 541(c)(2) is to ˚ the Internal Revenue Code and ERISA, for if it is, then there is no further inquiry in the case at bench.

■ The Plan's anti-alienation provisions are sufficient under the Internal Revenue Code and ERISA and therefore, under this urged interpretation, the debtor's interest in the Plan would not be property of the estate. Most courts, however, do not interpret § 541(c)(2) in this fashion. Rather, the bulk of the authority holds that applicable nonbankruptcy law means state spendthrift trust law. *In re Daniel,* 771 F.2d 1352 (9th Cir.1985); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); and *Matter of Goff,* 706 F.2d 574 (5th Cir.1983); *In re Pettit,* 61 B.R. 341 (Bankr.W.D.Wash.1986). *See also Bentz v. Sawdy (In re Sawdy),* 49 Bankr. 383 (Bankr.W.D.Pa.1985). Our preliminary inquiry is, therefore, whether Pennsylvania spendthrift trust law would place the debtor's interest in the thrift plan outside the reach of his creditors.

■ Pennsylvania law recognizes spendthrift trusts.

A spendthrift trust will be enforced as a matter of protecting the settlor's property rights, except that such trusts are contrary to public policy so far as an attempt is made by the beneficiary to avoid a legal obligation to support. 39 *Pa.Law Encyclopedia, Trusts,* § 152.

However, the Pennsylvania Supreme Court has ruled that it violates public policy for a person to create a trust for his own benefit, which allows him the beneficial incidents of ownership therein, while at the same time the trust is beyond the reach of those to whom he is or may be indebted. *In re Mogridge's Estate,* 342 Pa. 308, 311, 20 A.2d 307, 309 (1941). This policy has also been implemented under the Code. In *In re Pettit,* the court held that the operative

consideration for inclusion or exclusion from the bankruptcy estate is the degree of control that the debtor may exercise over the trust assets. 61 B.R. 341, 346 (Bankr. W.D.Wash.1986). *Accord In re Sawdy,* 49 B.R. 383 (Bankr.W.D.Pa.1985). On the one hand, if the debtor retains unbridled access to the funds, the funds properly belong in the debtor's estate. On the other hand, if the debtor has access under severely circumscribed conditions such as retirement, disability or death, then no bankruptcy policy or public policy would be frustrated by the exclusion of the funds from the debtor's estate.

The Plan here does not impose the type of restrictions, except with respect to the stock contributions, which result in exclusion from the bankruptcy estate. The terms of the Plan explicitly allow the debtor to withdraw all his employee contributions, as well as demand and receive distributions from the employer contributions for monies for the purchase of a new home or the college education of a child. The Plan explains the effect of such withdrawals for personal purposes:

> "To summarize this section, the Plan permits limited withdrawals if you and your family should need funds to meet special financial needs. However, this could defeat your purpose of providing a long-term savings and investment program for you and your family."

It appears that the affidavits of the plan administrator and the secretary of the company suggest a degree of restriction on the debtor's access to his interest in the Plan that is not found in the Plan itself. Those affidavits suggest that the debtor's right of withdrawal is, in practice, severely limited by the plan administrator as a matter of his discretion. However, we think that the plan administrator may not impose restrictions which remove the debtor's specific right of withdrawal as set forth in the plan. The right of the debtor to obtain the fund if, as, and when he desires for the personal purpose of buying a new house or paying educational expenses destroys the attributes of a spendthrift trust. The employee and employer contributions are therefore

not protected by state law pertaining to spendthrift trusts, and are part of the estate.

■ The portion of the debtor's interest consisting of stock contributions, however, is absolutely inaccessible by the debtor for any reason prior to death or retirement. It therefore qualifies as a spendthrift trust and is excludable from the estate under § 541.

■ B. *The § 522(d)(10)(E) Exemption.*

Section 522(d) provides:

(d) The following property may be exempted under subsection (b)(1) of this section ... (10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor ...

Pursuant to this provision, the debtor's right to exempt all or a portion of the Plan as determined above to be part of the debtor's estate, will turn on whether or to what extent the monies are reasonably necessary for the support of the debtor and any dependent of the debtor. This determination is of necessity fact-sensitive and the court is without an adequate factual record to make such a determination. Accordingly, a hearing shall be scheduled at which time the debtor will be required to demonstrate the extent to which the debtor's right to the fund, other than from stock contributions, are necessary for the support of himself and his dependents, taking into consideration all relevant facts, including the value of the debtor's entire interest in the fund.

It is therefore ORDERED that a hearing shall be held to determine the value of the debtor's interest in the Plan categorized as follows:

1. Employee and employer contributions to the Plan excluding the value of stock contributions in (2) below; and

2. Stock contributions to the Plan that are not subject to distribution prior to the debtor's termination from Hammermill.

These values shall be determined as of the date the debtor filed his Chapter 7 petition on November 13, 1985.

It is FURTHER ORDERED that the parties shall also produce evidence at such hearing in support of or in opposition to the amount of the exemption claimed by debtor under § 522(d)(10)(E) of the Bankruptcy Code.

This order is considered by this court to be an interim order and to be not appealable by an aggrieved party until an order on the merits finally adjudicating the rights of the debtor and the rights of the trustee is issued.