**In re Marlin Lee COMP, Debtor.**

**Bankruptcy No. 1–87–00140.**

United States Bankruptcy Court, M.D. Pennsylvania.

June 13, 1991.

Robert L. O'Brien, Carlisle, Pa., for debt-
or.

Lovette M. Mott, Gettysburg, Pa., Trustee.

## MEMORANDUM

ROBERT J. WOODSIDE, Bankruptcy Judge.

Before this Court is the Trustee's Motion for Turnover of Property of the Estate. A hearing on the motion was held and supporting briefs were filed by the parties.

■ The issues before the Court are: (I) whether Debtor's interest in two ERISA qualified defined contribution plans are excluded as property of the estate pursuant to 11 U.S.C. § 541(c)(2) and (II) if Debtor's interest is determined to constitute property of the estate, whether Debtor is entitled to any exemption of his interest in such plans pursuant to 11 U.S.C. § 522(d)(10)(E). As an ancillary matter (III), counsel for the plans' fiduciary has raised the issue of disqualification of the plans under 26 U.S.C. § 401(a) in the event the Court orders distribution to the Trustee; this additional matter is addressed in this Memorandum.[1]

### Findings of Fact

1. Debtor is 100% vested in two ERISA qualified defined contribution plans:

a. McCoy Brothers Profit Sharing Plan (hereinafter the "Plan"), in which Debtor has a 100% vested interest in the amount of $42,668.82 (as of December 31, 1989); and

b. McCoy Brothers Employee Stock Ownership Plan (hereinafter "ESOP"), in which Debtor has a 100% vested interest in the amount of $17,372.11 (as of December 31, 1989). The Plan and ESOP are federally qualified plans under ERISA and the Internal Revenue Code.[2]

2. Debtor began his employment with McCoy Brothers in 1976 and voluntarily terminated his employment in April of 1986. At the time of the hearing on this matter Debtor was 53 years old. Upon termination of employment, Debtor was entitled to receive a lump sum distribution of his vested amount under the Plan. Pursuant to Section 9.07 of the Plan, any employee with an account balance exceeding $3,500.00 may apply for distribution of the full account balance upon termination of employment. The ESOP does not provide for any distribution upon termination of employment.

3. In October of 1986, Debtor submitted an application to receive a lump sum distribution of his account balance under the Plan. At that time, Debtor did not submit the written consent of his spouse required for lump sum distribution. No spousal consent is required under the Plan if the participant selects monthly distribution.

4. At some later date in 1986, Debtor called McCoy Brothers to request that the company suspend taking any further action on his request for distribution.

5. Debtor filed a Chapter 7 petition on February 17, 1987.

6. A review of the testimony at the hearing establishes that the Debtor's gross household income is approximately $70,000.00. (T. of January 11, 1989 at 40) Debtor has a car provided for him through his current employer. (T. at 44) Debtor has not provided any support for the step-children who are living at home, nor is he under any legal obligation to do so; the children are all over the age of 18. (T. at 40) Further, two of the children have tuition benefits and other benefits through the GI Bill and BVR benefits.

### I

■ Our analysis begins with Section 541(a)(1) and the premise that all interests of the debtor in any property, be they legal or equitable, as of the commencement of the case constitute property of the estate.

---

1. Debtor raised in his answer and brief the issue of state exemption of the pension plan. It is evident from Debtor's Schedule B–4, filed March 10, 1987, that Debtor elected to proceed under the federal exemptions. Despite Debtor's contention to the contrary, 11 U.S.C. § 522(b) allows the debtor a *choice* between state or federal exemption systems, unless the state has opted out of the federal scheme of exemptions.

2. A "qualified" ERISA plan is defined as a plan formed pursuant to IRC § 401(a) and thus tax exempt pursuant to IRC § 501(a).

In order to exempt any such interest from the estate it is necessary to find a specific code provision explicitly setting forth such an exemption. Section 541(c)(2) purports to exempt from the property of the estate certain interests in trusts. Section 541(c)(2) excludes from the debtor's estate a beneficial interest of the debtor in a trust that is subject to a restriction on the transfer of such interest, if that restriction is enforceable under applicable nonbankruptcy law.

■ While the Third Circuit has not ruled on this issue, the majority of courts that have construed the phrase "applicable nonbankruptcy law" have determined that this phrase refers to state spendthrift laws, and not to the antialienation provisions of the IRC or ERISA.[3] *In re Babo*, 81 B.R. 389, 391 (Bankr.W.D.Pa.1988) (citations omitted); *In re Atallah*, 95 B.R. 910, 916–917 (Bankr.E.D.Pa.1989) (a pension fund is not excluded from the estate simply because it complies with the requirements of ERISA); *In re Graham*, 726 F.2d 1268, 1273 (8th Cir.1984) (ERISA retirement plan trust funds not exempt); *In re Goff*, 706 F.2d 574, 580 (5th Cir.1983) (Congress did not intend to create an ERISA-plan exemption in § 541(c)(2)); and *In re Mosley*, 42 B.R. 181, 190 (Bankr.N.J.1984) (per se exclusion of ERISA plans not appropriate). *Accord, Matter of Velis*, 123 B.R. 497 (N.J.1991) (adopting the view of the Fifth, Eighth, Ninth and Eleventh Circuits that the section's legislative history supports this interpretation). As noted by the court in *Velis*, a majority of the bankruptcy judges in this circuit read "applicable nonbankruptcy law" to encompass only state spendthrift trust law. *Id.* at 503; *In re Atallah*, 95 B.R. 910, 915 (Bankr.E.D.Pa.

1989); *In re Hysick*, 90 B.R. 770, 773 (Bankr.E.D.Pa.1988); *In re Heisey*, 88 B.R. 47, 51 (Bankr.N.J.1988); *In re Babo*, 81 B.R. 389, 391 (Bankr.W.D.Pa.1988); *In re Roberts*, 81 B.R. 354, 374 (Bankr.W.D.Pa. 1987); *but see, In re Sawdy*, 49 B.R. 383, 386 (Bankr.W.D.Pa.1985).

■ The phrase "applicable nonbankruptcy law" as used in subsection 541(c)(2) is not defined there or elsewhere in the Bankruptcy Code. *Velis*, 123 B.R. at 504. The question considered by various courts in the Third Circuit is the exact meaning of the word "applicable". Clearly, the use of the word "applicable" is not compatible with the proposition that Section 541(c)(2) refers to *any* nonbankruptcy law. Where the statutory language is unclear, a court is required to look to the legislative history of the statute to determine its meaning. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *In re Roach*, 824 F.2d 1370, 1372 (3d Cir.1987). Congress clearly intended that Section 541(c)(2) perpetuate the treatment of spendthrift trusts under subsection 70(a)(5) of the former Bankruptcy Act. *Velis*, 123 B.R. at 504.[4] This continued treatment establishes that the exclusion from property of the estate under Section 541(c)(2) is restricted to an interest in a spendthrift trust and limited to the extent that the trust is protected from creditors under state spendthrift law.

■ As additional support for this reading of Section 541(c)(2), there is the juxtaposition of Section 522(d)(10)(E) providing a federal exemption for pension payments necessary for the support of a debtor and/or his dependents. The vast majority

---

**3.** A prerequisite of qualification under IRC § 401 is the inclusion of an antialienation provision as set forth in § 401(a)(13): "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." The Bankruptcy Code actually holds the trust to a higher requirement; the trust must not only contain an antialienation provision but that provision must also be *enforceable* under applicable nonbankruptcy law. The provisions of ERISA and the IRC that require that "qualified" plans contain

"antialienation" clauses, do not also define requirements for the validity and enforceability of such provisions; rather those requirements are set forth under state law.

**4.** The court in *Velis* examines thoroughly the legislative history with respect to H.R. 8200, the Bankruptcy Reform Act of 1978, which in relevant part sets forth that the bill is designed to *continue* the exclusion from property of the estate the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable State law. *Velis*, 123 B.R. 497, 505, n. 3 (N.J.1991).

of existing pension plans are qualified under ERISA and IRC § 401 and therefore contain restrictions against alienation. It would be nonsensical to provide the "necessary for support" exemption in § 522(d)(10)(E) if virtually all pension plans interests were excluded from the debtor's estate by the application of subsection 541(c)(2). Rules of statutory construction dictate that specific language control the interpretation given to general language of the same statute. While there exist differing views as to the meaning of the language in § 541(c)(2), the interpretation of § 522(d)(10)(E) is clear on its face. Subsection 522(d)(10)(E) deals with an exemption of a very limited nature; the obvious corollary is that the majority of existing pension plans will be included in the debtor's estate.

■ This Court concludes that the phrase "applicable nonbankruptcy law" is synonymous with state spendthrift law; a pension plan provided by an employer may be excluded from the debtor's estate if it contains restrictions on transfer which are enforceable under state spendthrift trust law.[5] *Atallah*, 95 B.R. at 918; *Hysick*, 90 B.R. at 774; *Roberts*, 81 B.R. at 374.

■ The criteria for the maintenance of a valid spendthrift trust under the laws of the State of Pennsylvania have been set forth in prior case law. A spendthrift trust is one that restricts both the beneficiary's ability to alienate his interest in the fund and his creditor's ability to seize the property in satisfaction of his debts. *Atallah*, 95 B.R. at 919; *Wilson v. United States*, 372 F.2d 232, 234 (3d Cir. 1967); *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 20 A.2d 768 (1941). Pennsylvania purports to protect retirement trusts from judicial lien creditors, which would include a bankruptcy trustee in 42 Pa. C.S.A. § 8124(b)(1). However this statute is ineffective as applied to a debtor under the Code. The term "applicable nonbank-

ruptcy law" is strictly construed to refer to state spendthrift trust law and the term does not encompass any other state exemption statutes. *Accord, Atallah*, 95 B.R. at 918 (Section 541(c)(2) does not exclude property exempt from attachment by state statute).

■ The Pennsylvania Supreme Court has ruled that it violates public policy for a person to create a trust for his own benefit, which allows him the beneficial incidents of ownership therein, while at the same time the trust is beyond the reach of those to whom he is or may be indebted. *In re Babo*, 81 B.R. 389, 391 (Bankr.W.D.Pa. 1988), citing *In re Mogridge's Estate*, 342 Pa. 308, 311, 20 A.2d 307, 309 (1941). In the application of state spendthrift trust law to the concept of property of the estate under § 541(c)(1)(A) and § 541(c)(2), bankruptcy courts have developed specific criteria relating to the debtor's access and control over funds invested in such plans in determining the spendthrift nature of the trust. In the context of bankruptcy, whether or not a debtor is receiving the "beneficial incidents of ownership" in a spendthrift trust is determined through an inquiry into the degree of control that the debtor may exercise over the trust assets. *Accord, In re Babo*, 81 B.R. 389 (Bankr. W.D.Pa.1988); *In re Sawdy*, 49 B.R. 383 (Bankr.W.D.Pa.1985); *In re Hysick*, 90 B.R. 770 (Bankr.E.D.Pa.1988); *In re Atallah*, 95 B.R. 910 (Bankr.E.D.Pa.1989).

■ The debtor's degree of control over the trust is determined from the type of restrictions placed on the debtor's access to the trust. Clearly, if the debtor's interest in the trust assets is absolutely inaccessible for any reason prior to death or retirement the trust would qualify as a spendthrift trust under state law and would be excluded from the property of the debtor's estate. *See, In re Babo*, 81 B.R. at 392.[6]

---

**5.** The application of state spendthrift trust law is not inconsistent with 29 U.S.C. § 1144(d), which provides that ERISA preempts state law. This is not an application of state law to an ERISA plan, but rather an application of federal bankruptcy law, which requires the use of state spendthrift trust law. *In re Hysick*, 90 B.R. 770,

774 (Bankr.E.D.Pa.1988); *see also, Matter of Velis*, 123 B.R. 497, 508 (N.J.1991).

**6.** In the event the debtor is retired and receiving monthly payments under a retirement plan a portion of those monthly payments may become property of the estate; the court must perform

On the other hand, a wide variety of employer created trust plans have been held insufficient to create a spendthrift trust under Pennsylvania law. The key inquiry is whether the debtor has any ability under the plan to control the timing and manner of distribution, other than in the event of retirement, disability or death. *See, In re Nichols,* 42 B.R. 772 (Bankr. M.D.Fla.1984). Withdrawals pursuant to the plan that are acceptable under ERISA and the IRC may nonetheless negate the spendthrift nature of the trust.

It is necessary for the court to conduct a case-by-case analysis in determining the merits of an exclusion under § 541(c)(2). The court's focus on the debtor's access to plan funds requires the court to distinguish between plans that have the characteristics of a "true" spendthrift trust from those that are actually employer sponsored tax-deferred savings plans or deferred compensation plans under the auspices of ERISA and the IRC. The court of *In re Babo* found that plan insufficient under state spendthrift law wherein the plan permitted limited withdrawals of employee contributions for "special financial needs," such as the purchase of a new home or financing a college education.

As several of the recent Third Circuit decisions concerning the section 541(c)(2) exclusion involve IRA accounts or Keogh plans,[7] an instructive and analogous case concerning an employer sponsored plan is found in the Northern District of Indiana, *In re Pulley,* 111 B.R. 715 (Bankr.N.D.Ind. 1989). The stock ownership plan (ESOP) maintained by Bethlehem Steel for the benefit of its employees, permits a participating employee to withdraw amounts contributed to the ESOP upon termination of employment or, upon request, two years from the date the stock was contributed to the plan. Under Indiana law the ability to gain

access to pension or savings funds is dispositive on the issue of whether the funds become part of the Debtor's estate. *Id.* at 724. The court in *Pulley* noted that despite the fact that the debtor was still employed at Bethlehem and did not have access to the funds on the exact date of the bankruptcy filing, he does not have to wait until retirement to receive the benefit of his interest in the plan.[8] *Id.* The *Pulley* court held that the debtor's right of access departed from the traditional state spendthrift exception and therefore, the plan funds were property of the estate under § 541(a). *Id.* at 752. *Accord, Matter of Cook,* 43 B.R. 996 (N.D.Ind.1984).

While these employer sponsored plans are certainly worthy of protection from disqualification the corpus of such plans may not be retained by an individual debtor at the expense of his creditors. In determining the degree of debtor's access to the funds, the analysis in each instance turns on both the plan provisions and the debtor's employment status at the time of bankruptcy.

A plan that restricts a participant's access to termination, retirement, disability or death does meet the criteria for a valid spendthrift trust; however, when any of the specified events occurs (i.e. termination, retirement, disability or death) access to the debtor's interest to the trust is triggered. Once access is triggered, the interest in the trust can no longer be properly excluded under § 541(c)(2) because the debtor now has a present right to payment; only an exemption under § 522(d)(10)(E) is available to the debtor.

It is evident from a review of current cases that the ability of the debtor to access funds is the determining factor in the application of § 541(c)(2), because that ability negates the spendthrift nature of the trust. As previously noted, the determina-

---

an analysis under 11 U.S.C. § 522(d)(10)(E) to determine what portion of the monthly payment is exempted as reasonably necessary for the support of debtor and any dependents.

7. *In re Atallah,* 95 B.R. 910 (Bankr.E.D.Pa.1989); *In re Hysick,* 90 B.R. 770 (Bankr.E.D.Pa.1988); *In re Heisey,* 88 B.R. 47 (Bankr.N.J.1988).

8. The 11 U.S.C. § 522(d)(10)(E) federal exemption is unavailable in Indiana as the state has elected to "opt-out" of the federal scheme of exemptions.

tion as to whether the debtor's interest in a retirement or stock ownership fund will be included in the debtor's estate requires a case-by-case analysis and will turn on the application of the plan's provisions to the individual debtor's employment status.[9]

The provisions of the McCoy Brothers Plan and ESOP are not identical. The question before this Court is the effect the Debtor's termination of employment had on the characterization of his interests held in the Plan and ESOP. Article IX of the Plan sets forth the terms for Distribution on Termination of Employment Prior to Retirement. Pursuant to paragraph 9.01, "Upon termination of employment of a Participant for reasons other than retirement, disability, or death, the terminated Participant shall be entitled to a distribution hereunder in accordance with the provisions of Section 9.07 only to the extent of the Participant's vested interest." In addition, Section 9.06 requires that upon termination of employment the participant shall be notified of the amount of vested equity in the Plan and the available distribution options.

In accordance with Section 9.07, if the value of the participant's vested account balance exceeds $3,500.00 the participant may file a written request, along with the written consent of the participant's spouse, for payment of the entire amount of the vested account balance. In fact, the Debtor was compelled under Section 10.3 to make an election regarding the distribution of his vested share within 60 days of the close of the plan year in which he terminated his employment. Under Section 10.2 the debtor had the choice of various annuities or a lump sum payment.

Furthermore, if the participant does not elect to receive the entire amount of the vested account balance upon termination of employment the Plan trustee may place such funds in one or more federally insured instruments or accounts in trust for the former employee; in this event, the debtor would be unable to access the funds until retirement.

As an interested party, McCoy Brothers has raised the question of the validity of the Debtor's prior election to receive a lump sum distribution in that Debtor's request was not accompanied by his spouse's written consent. The requirement of spousal consent was not raised as an impediment to distribution by either the Debtor or McCoy Brothers prior to the hearing on the present motion and none of the testimony received at the hearing would indicate that the Debtor has been or will be unable to obtain his spouse's consent. The Debtor's testimony indicates that he withdrew his application for distribution under the Plan because of his decision to file for bankruptcy. The Debtor failed to list the Plan and ESOP funds on his schedules in any manner for fifteen months and, in fact, only filed an amended schedule B–4 declaring the interest as exempt several months after the Trustee's Motion for Turnover of Property was filed.

---

9. The sentiments expressed by the Honorable Daniel J. Moore in his epilogue to the court's opinion in *In re Velis,* 109 B.R. 64, 73 (Bankr. D.N.J.1989), *aff'd,* 123 B.R. 497 (N.J.1991) are noteworthy. Judge Moore advocates that the administration of both ERISA and the Bankruptcy Code would be better served if the interests of debtors in pension plans were uniformly included as property of the estate; thereafter, a value could be placed on the debtor's interest (right to receive) whether in the present or future. The extent, if any, of the exemption would be based upon necessity. *Id.* at 73. "Necessity" would be lacking if due to the debtor's age and employment there was the opportunity to re establish a fund. *Id.* In a case where the debtor is close to pay status, a determination of the amount necessary to support the debtor and his dependents could be made followed by a calculation of the present value of that need which would be exempt. To the extent that the retirement fund exceeds the need, the excess would be available for creditors. *Id.*

This proposal is eminently practical and fair. It would provide for uniform treatment of plan funds nationwide. It would be to the benefit of debtors and creditors; the exemption under § 522(d)(10)(E) would protect the interests of debtors and their dependents, while the opportunity for a distribution of any excess would benefit the creditors. The existence of the exemption under § 522(d)(10)(E) serves ERISA's objective of preserving essential pension benefits.

This Court would favor this approach as an alternative to the present tortured analysis under § 541(c)(2).

 Debtor and his counsel were certainly aware that any claimed exemption should have been set forth in the original schedules and statement of affairs. Property exempted pursuant to § 522 initially enters the estate and is subsequently excluded. *In re Maide,* 103 B.R. 696, 698 (Bankr.W.D.Pa.1989), citing *In re Goff,* 706 F.2d 574, 579 (5th Cir.1983). Regardless of whether the debtor's pension is determined later to be exemptible, its existence and amount must be disclosed.

Turning to the provisions of the ESOP, there is no corresponding provision for a distribution of funds upon termination of employment prior to retirement. Under the trust separate accounts are maintained for all inactive participants. Section 8.07 entitled Distribution on Termination provides as follows:

> Upon termination of employment for any reason other than retirement, death, or total and permanent disability, the Trustee shall retain the vested account balance in trust for the named terminated Employee. This account and all accumulated interest shall be used to make a distribution to the Employee at the time he attains his Normal Retirement Date in a single sum in accordance with the provisions of Section 7.06. In the event the Employee dies before reaching his Normal Retirement Date, such account balance shall be distributed to the Beneficiaries of the Employee subject to the restrictions contained in Section 7.05.

It is evident that access to Debtor's vested account in the ESOP is restricted in accordance with spendthrift trust standards and the participant has no control over the manner or timing of distribution despite the termination of his employment.

 Accordingly, Debtor's interest in the ESOP is properly excluded under § 541(c)(2) as an interest in an enforceable spendthrift trust. However, Debtor's interest in the Plan is properly included as property of the estate under § 541(a)(1). The determining factor is the Debtor's termination of his employment which triggered his access to his vested account balance in the Plan. It is irrelevant to this analysis that the Debtor actually attempted to receive a lump sum distribution prior to the filing of his bankruptcy petition; it is the *right* to control the timing and manner of distribution, not the exercise of that right, that determines the characterization of the Debtor's interest.

## II

Turning to the exemption provision of § 522(d)(10)(E), it is necessary to reconcile the precedent of *In re Clark,* 711 F.2d 21 (3d Cir.1983) with recent Third Circuit cases, with regard to the scope and extent of this exemption.

The *Clark* court held that a § 522(d)(10)(E) exemption is applicable only where a debtor has a present, as opposed to a future, right to receive the pension and retirement benefits at issue. *Id.* at 23. Under consideration in *Clark* were the proceeds of a Keogh retirement plan maintained for the benefit of the 43 year old debtor. The Court concluded that the debtor had a future right to receive payments and therefore an exemption under § 522(d)(10)(E) was denied. It is essential to note the limitations of the court's opinion in *Clark.* The court clearly states that the issue as to whether the fund was property of the bankruptcy estate was not before the court. *Id.* at 22.[10] Therefore, the court in *Clark* did not take into consideration § 541(c)(2) and the spendthrift trust analysis applied in subsequent cases.

The opinion in *Clark* is not comprehensive in scope when compared to later cases concerning Keogh and IRA retirement plans. While *Clark* has not been expressly overruled, those subsequent cases that consider the question of whether a Keogh or

---

**10.** The Trustee has urged the Court to rely on *In re Clark,* 711 F.2d 21 (3d Cir.1983) for the proposition that the Debtor's interest in the ESOP is a future right to payment for which the § 522(d)(10)(E) exemption is unavailable. The Trustee's position ignores the effect of a preliminary analysis under § 541(c)(2), wherein it is determined that the ESOP contains the provisions of an enforceable spendthrift trust and, accordingly, is excluded from the debtor's estate.

IRA retirement plan is property of the estate using the § 541(c)(2) analysis reach conclusions incompatible with the court's holding in *Clark*. *See, In re Hysick*, 90 B.R. 770 (Bankr.E.D.Pa.1988) (While *Clark* may be significant in determining the scope of the 11 U.S.C. § 522(d)(10)(E) exemption, it is not relevant in determining the scope of the 11 U.S.C. § 541(c)(2) exclusion).

When the determination is based upon the debtor's *access* to plan funds subsequent cases have held that a debtor may control the timing and manner of distribution of proceeds from Keogh or IRA trust fund (with minor tax penalties) and, therefore, the debtor does have a *present* right to payment. *Matter of Velis*, 123 B.R. 497 (N.J.1991); *In re Atallah*, 95 B.R. 910 (Bankr.E.D.Pa.1989); *In re Heisey*, 88 B.R. 47 (Bankr.N.J.1988); *In re Goff*, 706 F.2d 574 (5th Cir.1983). These cases illustrate the emerging consensus that the § 541(c)(2) exemption is narrowly construed and often the debtor's ability to exempt retirement plan trust funds will depend upon the outcome of a § 522(d)(10)(E) determination.

■ As the Debtor has a present right to receive a distribution of his vested interest in the Plan, due to the termination of his employment, the next question before the Court is whether any part of the Debtor's interest may be exempted as reasonably necessary for the support of the Debtor and any dependents of the Debtor. An exemption is provided for:

(10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408, or 409).

11 U.S.C. § 522(d)(10)(E). The first inquiry is whether all three subsections of § 522(d)(10)(E) have been satisfied. *Matter of Velis*, 123 B.R. at 510. The Trustee has not raised the issue of disqualification of the Plan under subsection (iii), so the Plan is deemed to be so qualified. Therefore, the Debtor's interest in the Plan may be exempt to the extent reasonably necessary to support the Debtor and his dependents.[11]

After reviewing the discussion of exemption provisions in the House Report on H.R. 8200, the Court in *Velis* concluded that the phrase "to the extent reasonably necessary for ... support" is properly construed to refer to subsistence, not to lifestyle maintenance. *Matter of Velis*, 123 B.R. at 510. The House Report refers to the "basic necessities of life so that ... the debtor will not be left destitute and a public charge". H.R.Rep. No. 95–595, 95th Cong., 2d Sess., 126 (1977), *reprinted in*, 1978 U.S.Code Cong. & Admin.News at 5787, 6087.

■ The factors to be considered in determining the basic needs of the debtor and his dependents include: (1) debtor's present and anticipated living expenses; (2) debtor's present and anticipated income from all sources; (3) the age of the debtor and his dependents; (4) the health of the debtor and his dependents; (5) debtor's

11. The Debtor has asserted in his Response to Motion for Turnover of Property of the Estate filed that he is entitled to an exemption of his interest in the Plan "for the purposes of the Debtor's retirement, in accordance with the intent and purpose of the pension under 11 U.S.C. § 522(d)(10)(E)." Debtor has misconstrued both the intent and application of the exemption under § 522(d)(10)(E). The exemption applies to the present right to receive payments, not future retirement and it is necessary for the Debtor to demonstrate to the Court that the funds are reasonably necessary for the support of the Debtor and his dependents. The Debtor has ignored the standard of "reasonably necessary for support" and has not alleged that the funds are in fact necessary for such support.

ability to earn a living; (6) debtor's job skills, training and education; (7) debtor's other assets, including exempt assets; (8) the liquidity of other assets; (9) debtor's ability to save for retirement; (10) the special needs of the debtor and his dependents; and (11) debtor's continuing financial obligations, e.g., alimony or support payments. *Matter of Velis*, 123 B.R. at 511, *citing, In re Flygstad*, 56 B.R. 884, 889–90 (Bankr. N.D.Iowa 1986). As noted by the *Velis* court, while the expenses of the debtor's wife will be considered in determining the basic needs of the debtor's dependents, so too will the wife's income and assets be included in this support determination. *Velis*, 123 B.R. at 511.

■ Debtor indicated in his schedule of current income and current expenditures a monthly net income of $2,300.00 and matching expenditures of $2,300.00 a month. However, Debtor's monthly gross income must approximate $3,333.00 based upon a yearly salary of $40,000.00. (T. at 36) Some unspecified portion of the Debtor's income is dependent upon commissions which could result in a slight increase or decrease in his compensation. However, the Debtor must be fairly confident of maintaining his present level of compensation given his election to contribute a percentage of his salary to his current employer sponsored retirement plan. (T. at 36) The Court is wary of unspecified amounts of payroll deductions that serve to reduce the amount of net income reported on the Debtor's schedules.

It is noteworthy that the Debtor has been successful in managing his income in the past. While he has listed in his schedules unsecured debts in the amount of $142,671.48, it appears that only one unsecured debt of $8,011.23 is presently valid and enforceable. The remaining $134,-660.25 of listed unsecured debt arise from the failure of Debtor's business fifteen years before in 1972–1973. It is curious that the one unsecured debt the Debtor sought to discharge by his petition is owed to his former employer, McCoy Brothers, the custodian of the ESOP and Plan funds in which the Debtor holds a vested interest;

the discharge entered September 29, 1987 precludes McCoy Brothers from asserting any right of set-off in the event of a lump sum distribution under the Plan.

The Debtor managed to acquire valuable real estate investments pre-petition. Debtor's schedule of current monthly expenditures lists amounts of $350.00 and $175.00 for mortgage payments on rental properties (hereafter "investment properties") owned by the debtor and an additional $150.00 for utility payments on the investment properties. These amounts are in addition to the $120.00 for mortgage payments and $175.00 for utilities on the Debtor's residence at 403 Forge Road, Boiling Springs, Pa. This residence was owned jointly by the Debtor and his former spouse, Joyce H. Comp, whereas the investment properties are owned by the Debtor and his present spouse, Juanita J. Comp. Unfortunately the residence, acquired in 1968, was fully encumbered due to several judgment liens arising from the Debtor's previous financial difficulties; by Order of this Court dated December 7, 1987 Reynard and Sheaffer, Inc. was granted relief from the automatic stay to proceed with foreclosure. At the time of this hearing, the Debtor's wife had indicated to Reynard and Sheaffer, Inc. an interest in purchasing the residence back after foreclosure.

A review of the testimony reveals that despite the vague and general nature of the Debtor's testimony regarding his current financial position, it is evident that the Debtor and his dependent spouse are "comfortable" financially. Debtor testified that his wife's income was "in the $30,000.00 range". (T. at 40) The Debtor has the benefit of a company car. (T. at 44). None of the Debtor's stepchildren can be considered a dependent of the Debtor as they are all over the age of eighteen.

In conclusion, the Debtor and his dependent spouse earn a substantial income. The Debtor elects to participate in contributing to a retirement plan with his current employer. He is spending a minimum of $675.00 to maintain his investment properties; in the event he needs to increase his monthly disposable income, the Debtor can

sell these properties, be relieved of these expenses and additionally realize any equity he may have in the properties. The Debtor has the benefit of retaining his vested interest in the ESOP as a foundation for his retirement planning so that less of his disposable income will need to be diverted to investments for retirement. The Debtor is in good health and there are no special needs to be considered. Accordingly, this Court finds that the Debtor is not entitled to exempt any portion of his interest in the Plan under § 522(d)(10)(E).

### III

■ Finally, we address the concern raised by counsel for McCoy Brothers, Inc. that an order for turnover of the Debtor's interest in the Plan will result in disqualification of the employer's retirement plan. This concern arises from private letter rulings issued by the I.R.S.; there is no precedential value to private letter rulings and those rulings are not binding on any court. Title 26 U.S.C. § 6110(j)(3) provides that unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent. *Accord, In re Pulley*, 111 B.R. 715, 742 (Bankr.N.D.Ind.1989). However, bankruptcy courts traditionally accommodate the employer by fashioning the turnover order in a manner consistent with the continued qualification of the employer's plan.

The court in *Pulley* examines several relevant letter rulings issued by the I.R.S., including the identical letter ruling No. 89–10035 of March 10, 1989 as referenced by counsel for McCoy Brothers. *Id.* at 742–746. It is clear from the *Pulley* court's review of such letter rulings that the I.R.S. framework for analysis ignores the body of precedent interpreting § 541(c)(2) that has developed in the Bankruptcy and District Courts. The I.R.S. has adopted the position that 26 U.S.C. § 401(a)(13) "is exclusive and definite and preempts the law on alienability of pension benefits in Bankruptcy proceedings." *Pulley*, 111 B.R. at 744, *citing*, Private Letter Ruling No. 89–10035. Erroneously the I.R.S. has further concluded that "even if the Bankruptcy Code was not superseded by ERISA and

IRC, the funds in an ERISA and IRC qualified plan were excepted from becoming property of the bankruptcy estate because ERISA and IRC fall within the 'applicable nonbankruptcy law' exception under § 541(c)(2). *Id., citing,* Private Letter Ruling No. 88–29009 (April 6, 1988). Ironically the I.R.S. did assert that a participant whose employment had terminated, where termination was an event triggering distribution under the plan, would be subject to a Bankruptcy Court order directing distribution from the plan to the participant, although not directly from the plan to the bankruptcy trustee. *Id.*

■ The method of analysis adopted by the I.R.S. is flawed and, therefore, the Private Letter Rulings are not persuasive on this issue.

> Conspicuously absent from the foregoing Private Letter Rulings is any analysis as to what law governs the creation and determination of the trust or property interest. The cited IRC, Regulations, and legislative history do not contain such enabling or organic provisions for the creation and determination of such trusts or agreements, but rather, merely require qualified plans contain certain features including an antialienation provision to be accorded a certain tax status. The erroneous premise of these Private Letter Rulings is that the assets are completely protected by the applicable ERISA and IRC sections. A breach of applicable IRC sections, however, reveals that protection is limited simply to prevention of assessment of certain income and penalty taxes.

*Id.* at 745.

As discussed *supra*, this Court does not perceive a statutory conflict between the I.R.C. § 401 and § 541 of the Bankruptcy Code; § 522(d)(10)(E)(ii), (iii) of the Bankruptcy Code limits the applicability of the pension plan exemption available to debtors to qualified plan funds under I.R.C. § 401. Clearly, Congress anticipated retirement plan funds coming into a debtor's estate under the broad scope of § 541(a) and, in fashioning the exemption scheme chose to

make the § 522 exemption available *only* to participants in plans that are qualified under ERISA and IRC. The I.R.C. and the Bankruptcy Code are complementary statutes in this respect. *Accord, In re Pulley,* 111 B.R. at 746; *Regan v. Ross,* 691 F.2d 81, 87 (2d Cir.1982).

■ In order to circumvent the spectra of wholesale disqualification of employer's retirement plans by virtue of a single employee/participant filing for bankruptcy, an appropriate order will be entered, directing the Debtor to complete his application (including spousal consent) for a lump sum distribution under the Plan and, upon receipt of said distribution, to turn over the entire amount to the Trustee. This form of the order is an accommodation to the parties; however, if it becomes necessary, this Court will order a direct distribution from the Plan to the Trustee.

### ORDER

AND NOW, this 13th day of June, 1991, in accordance with the accompanying Memorandum,

IT IS ORDERED that Debtor's interest in the McCoy Brothers Profit Sharing Plan is determined to be included in Debtor's estate pursuant to § 541, and that the Debtor is not entitled to any exemption of said interest pursuant to § 522(d)(10)(E).

IT IS FURTHER ORDERED that the Trustee's Motion for Turnover of Property of the Estate is granted and that the Debtor shall forthwith complete the required application for the distribution of said interest under the Profit Sharing Plan.

AND, IT IS FURTHER ORDERED that upon receipt of the distribution of said interest that the Debtor shall turn over the entire amount of the distribution to the Trustee.