**In re Margaret W. TOOKER.**

**Bankruptcy No. 93–10791.**

United States Bankruptcy Court, D. Vermont.

Oct. 28, 1994.

G. Glinka, U.S. Trustee of Glinka & Schwidde, Cabot, VT.

M. Wiener of Wiener and Amis, Burlington, VT, for debtor Margaret W. Tooker.

## MEMORANDUM OF DECISION GRANTING DEBTORS'S EXEMPTION

FRANCIS G. CONRAD, Bankruptcy Judge.

Debtor seeks to exempt a cash management account, savings account, and accounts receivable, all of which derived from the proceeds of an insurance policy on her late husband's life, under 12 V.S.A. § 2740(19)(H). Trustee filed a timely objection to the proposed exemption under 11 U.S.C. §§ 522(a)(1) and Fed.R.Bkrtcy.P. 4003(b).[1] We overrule the objection to the exemption because the proceeds of the insurance policy are reasonably necessary for Debtor's support.

### FACTS

Debtor is a 62–year–old widow. Her spouse died in 1990. At that time she had no dependents or liquid assets and was not employed. She received $175,850.78 from her spouse's life insurance policy. From that money, Debtor gave $10,720 to a daughter, approximately $10,200 to a son, and $2,206 to another son. The children received the money with the understanding that they would repay their mother when they could. No interest was required and no written instruments were executed. To date, only one child has made any repayments. This child deposits $35 a week into a cash management account. This account was worth $2,314 at the time Debtor filed.

Debtor also has $5,025 in a savings account, and $14,615 in accounts receivable. She claims these three accounts, totalling $21,954, as exempt. Debtor meets the preliminary requirements of 12 V.S.A. § 2740(19)(H) because the funds in question are traceable to the proceeds of her husband's life insurance policy, Stipulation L, on whom she was dependent. Stipulation C.

Debtor is currently in good health and employed as a cytotechnologist[2], earning $27,390 a year in take-home pay. Although her net monthly income is $2,282.50, her monthly expenses of $2,297 slightly exceed that amount. She is presently able to cover that deficit from approximately $6,555 in savings and checking accounts. Upon retirement, she will be eligible for Social Security benefits of $900 per month. In addition to those benefits, IRA accounts totalling $12,000 and a tax-deferred annuity will be available. In addition to the $21,954 claimed exempt, she will retain a total of $19,186 in liquid assets after her bankruptcy.

### ARGUMENT

Debtor argues that the accounts at issue are exempt under 12 V.S.A. § 2740(19)(H).[3] This statute exempts, to the extent "reasonably necessary for the support of the debtor," proceeds of a life insurance policy on an

---

1. Our subject matter jurisdiction over this matter arises under 28 U.S.C. § 1334(b) and the general reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by F.R.Bkrtcy. P. 7052.

2. It should be noted that the some of the insurance policy proceeds funded the education and training necessary for this job.

3. 12 V.S.A. § 2740(19)(H) permits the debtor to exempt:

> property traceable to or the debtor's right to receive, to the extent reasonably necessary for the support of the debtor and any dependents of the debtor:
>
> . . . .
>
> (H) payment under a life insurance contract that insured the life of an individual on whom the debtor was or is dependent on the date of that individual's death.

individual on whom Debtor was dependent. *Id.* Debtor also contends that the funds delivered to her children were not loans, but gifts. As such, she argues, the possible repayment of those gifts cannot be considered as income in calculating the amount reasonably necessary for her support.

Trustee objects to the proposed exemption, requesting an interpretation of the Vermont statute. Trustee was unable to determine whether the funds in the disputed accounts are "reasonably necessary" for the Debtor's support because of the absence of controlling precedent construing the "reasonably necessary" clause of the statute.

## DISCUSSION

The issue before the court is heavily fact-dependent. *See e.g. Matter of Kochell,* 732 F.2d 564, 566 (7th Cir.1984) (construing the federal exemption statute); *In re Boggess,* 105 B.R. 470, 475 (Bkrtcy.S.D.Ill.1989).

### Standard for "Reasonable and Necessary"

■ The parties agree and our research confirms that the standard to be applied in determining what is "reasonably necessary" under 12 V.S.A. § 2740(19)(H) is a matter of first impression for Vermont. As Senior Bankruptcy Judge Charles J. Marro has previously noted, similar language in 11 U.S.C. § 522(d) was "derived in large part from the Uniform Exemption Act." *In re Sheridan,* 38 B.R. 52, 57 (Bkrtcy.D.Vt.1983), *quoting In re Miller,* 33 B.R. 549, 553 (Bkrtcy.D.Minn. 1983). Accordingly, we adopt the standard used by many other courts interpreting substantially similar federal and state exemption statutes. A list of 11 factors to be weighed in assessing the needs of the debtor has been widely used:

1) debtor's present and anticipated living expenses;
2) debtor's present and anticipated income from all sources;
3) age of debtor and dependents;
4) health of debtor and dependents;
5) debtor's ability to work and earn a living;
6) debtor's skills, training, and education;
7) debtor's other assets, including exempt assets;
8) liquidity of other assets;
9) debtor's ability to save for retirement;
10) special needs of the debtor and dependents; and,
11) debtor's financial obligations, such as alimony or support payments.

*See In re Flygstad,* 56 B.R. 884, 889–90 (Bkrtcy.N.D.Iowa 1986); *In re Bartlett,* 67 B.R. 455, 457 (W.D.Mo.1986); *In re Hotchkiss,* 93 B.R. 546, 548 (Bkrtcy.N.D.Ohio 1988).

### Loan or Gift?

■ We first consider whether the possibility that Debtor's children will repay the "loans" should be considered as income in assessing the Debtor's financial situation. If the transactions with her children were indeed loans that they are obligated to repay, then, under the second element of the test noted above, the repayments may be included as income. If they were gifts, however, with no enforceable repayment obligation, then they can't be relied upon to produce income for Debtor.

The parties stipulated that the money was given on the condition that the children "would repay the money at such time as they could afford to." Stipulation G. This would suggest that Debtor expected or at least hoped for repayment. Moreover, one child's initial, if minimal, attempts to repay the sum he received supports the inference that it was a loan.

Practical experience, however, suggests a different categorization. In the context of a family, such a transaction is usually dissimilar to a loan in any commercial sense. Such is the case here. There were no specific terms of repayment, no interest rates, and no written notes or contracts. That Debtor expected prompt, reliable repayment is unlikely. The more likely scenario is that Debtor, motivated by maternal rather than economic concerns, chose to share with her children the proceeds of their deceased father's life insurance policy. It is a rebuttable presumption that a transaction from a parent to child is a gift. *Torrez v. Torrez,* 63 B.R. 751, 754 (9th Cir. BAP 1986) (child was presumed to have been given title to land from a parent);

*In re Clemens,* 472 F.2d 939, 943 (6th Cir. 1972); *Van Dreal v. Van Dreal,* 214 F.2d 715, 716 (10th Cir.1954); And, except for one child, it appears that she gave the money on such vague terms that it did not create an expectation of repayment in any of the parties. Accordingly, and without more evidence, we hold that the transactions were gifts. Even if we are wrong, and they really are loans, the possibility of repayment is too uncertain to include in calculations of Debtor's future income. The children may simply never be able to afford to repay Debtor.

Moreover, we hold that Debtor is entitled to her exemption whether or not the "loans" are repaid. While the approximately $23,000 Debtor gave to her children is certainly a significant sum, it is, in Debtor's circumstances, far from sufficient to propel her into the lap of luxury. Our calculations, set out below, demonstrate that even if the loans are in fact fully repaid, she would still be entitled to the exemption, and, indeed, would still be facing a financial shortfall.

**Debtor's "Reasonably Necessary" Expenses**

■ A simple mathematical comparison of Debtor's likely living expenses against her anticipated income demonstrates that she is entitled to the exemption even if the "loans" are repaid. A 62–year–old woman in average health has a life expectancy of 14.78 years. E. Reeves, Handbook of Interest, Annuity, and Related Fiscal Tables, 127 (1966). Multiplying 14.78 years by her current living expenses,[4] results in a fair approximation of her expenses over the rest of her life:

$$14.78 \text{ yrs.} \times \$2{,}282.50 \text{ month} \times 12 \text{ months} = \$407{,}395.92 \text{ lifetime expenses}$$

Next we compute her total expected lifetime income by adding her annual salary for three years (assuming that she retires at age 65), with her post-retirement income from (Social Security benefits and pensions) and include her liquid assets:

$$
\begin{aligned}
& 3 \text{ yrs} \times \$27{,}390 \text{ salary} \\
+\ & 11.78 \text{ yrs post-retirement life expectancy} \times \$900 \text{ month} \times 12 \text{ months} \\
+\ & \$21{,}355 \text{ total of pensions} \\
+\ & \$19{,}186 \text{ liquid assets} \\
\hline
=\ & \$249{,}935 \text{ total anticipated lifetime income}
\end{aligned}
$$

When we compare Debtor's total anticipated lifetime income to her total lifetime expenses it becomes obvious that her expected income is entirely insufficient for her needs, and that the accounts at issue will be necessary for her support. From these numbers it follows that the exemption is appropriate.

## CONCLUSION

The money in the accounts at issue is reasonably necessary for Debtor to meet her anticipated living expenses. Even though we believe that the "loans" were more akin to "gifts", any repayment would also be necessary for her subsistence. An exemption of these three accounts and any possible repayment of the "loans" will merely supplement resources that will be exhausted by her necessary living expenses. Accordingly, Debtor's request for an exemption of the three accounts totalling $21,954 is allowed.

---

4. A debtor's current standard of living does not necessarily have to be maintained, because it may exceed what is "reasonably necessary" to live. *In re Taft,* 10 B.R. 101, 107 (Bkrtcy. D.Conn.1981) (proper test is basic need, not former lifestyle); *In re Comp,* 134 B.R. 544, 554 (Bkrtcy.M.D.Pa.1991) ("reasonably necessary" means what's necessary for subsistence, not what's necessary to maintain lifestyle). In the case at hand, we find that the Debtors's current expenses of $2,297 per month is approximately the level that is reasonably necessary for her support.