**In re David and Sharon COLLINS, Debtors.**

No. 5–00–02453.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

July 3, 2002.

Kimberly D. Martin, Honesdale, PA, for trustee.

Steven E. Burlein, Honesdale, PA, for debtors.

John J. Martin, Honesdale, PA, trustee in bankruptcy.

### OPINION[1]

JOHN J. THOMAS, Bankruptcy Judge.

This case comes before the Court on the Trustee's Objection to the amended exemptions of the surviving joint Debtor, exempting life insurance proceeds under Section 522(d)(11)(C) of the Bankruptcy Code [11 U.S.C. § 522(d)(11)(C) [2]]. The parties have prepared and filed a Stipulation of Facts (hereinafter "S.O.F."), which is adopted by the Court.

### Statement of Facts

The Debtors, David and Sharon Collins, filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code on July 13, 2000 (the "filing date") (S.O.F.¶ 1). On July 19, 2000, John J. Martin, Esquire, was appointed case Trustee (S.O.F.¶ 2). Unfortunately, the male Debtor passed away less than one week later on July 25, 2000 (S.O.F.¶ 3). At the time of his death, David Collins held two life insurance policies payable to his wife, Sharon Collins: ING Group in the amount of $50,172.00 and Principal Financial Group in the amount of $10,016.00 (S.O.F.¶ 4). The proceeds of these insurance policies constitute property of the estate pursuant to 11 U.S.C. § 541(a)(5)(C) (S.O.F.¶ 5).

Although the original schedules did not list the insurance policies as property of the estate, Sharon Collins filed amended Schedules listing the insurance proceeds under amended Schedule B and claiming exemption of these proceeds in amended Schedule C (S.O.F.¶ 6); the Principal Financial Group proceeds ($10,016.00) were exempted under 11 U.S.C. § 522(d)(5) and the ING Group proceeds ($50,172.00) were exempted under 11 U.S.C. § 522(d)(11)(C). In response, the Trustee filed an Objection to the exemption of the ING Group proceeds, claiming that it exceeds the exemption limit set forth in the statute (S.O.F.¶ 7). However, the Trustee does not oppose exemption of $15,000.00 of these insurance proceeds (S.O.F.¶ 9).

The Debtor has custody of two children, ages 4 and 10 (S.O.F.¶ 10). She is employed and earns net pay of $1,120.64

---

1. Drafted with the assistance of Keith Hunter, Law Clerk.

2. 11 U.S.C. § 522(d)(11)(C) reads as follows:
   (d) The following property may be exempted under subsection (b)(1) of this section
   . . .
   (11) The debtor's right to receive, or property that is traceable to . . .

   (C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

monthly from her job of thirteen years as a county court clerk (S.O.F.¶ 11). Ms. Collins has a pension valued at approximately $17,000.00, and has family health coverage through her employer, with a $250.00 annual deductible (S.O.F.¶ 13, ¶ 14). She is a high school graduate, and she is the sole income source for the household (S.O.F.¶ 15, ¶ 16). Although the monthly household expenses were $1,807.79 on the filing date, they have now decreased by $335.00 (S.O.F.¶ 17). The Debtor and her children are in good health and have no special needs (S.O.F.¶ 18). In addition to the insurance proceeds at issue in this case, the Debtor has exempted general household goods and furnishings, wearing apparel, a 1993 Chevy Cavalier, three (3) certificates of deposit with $3,874.00 aggregate value, a 401k Plan valued at $1,049.00, the Principal Financial Group life insurance proceeds of $10,016.00, and a Retirement Plan valued at $17,058.00, all without objection (S.O.F.¶ 19)

## Procedural History

This matter was commenced by the Trustee's Objection to the exemptions, to which the Debtor has filed an answer. Subsequently, the Court granted a request of the parties to decide this case on briefs and stipulated facts. A stipulation and briefing deadline was ultimately set for August 15, 2001. Both parties have filed their Briefs and a joint Stipulation of Facts and the matter is now ready for determination.

3. The "Trustee's Objection to Debtor's Exemption of Life Insurance Proceeds" only references the ING Group proceeds in the amount of $50,172.00. However, the "Brief in Support of Trustee's Objection to Debtors' Exemption of Life Insurance Proceeds", at page 2, states "The total amount of insurance Proceeds in questions (sic) is $45,188.00."

## Discussion of Law

■ The Trustee has objected to the Debtor's exemption claim under 11 U.S.C.A. § 522(d)(11)(C) related to life insurance proceeds of $50,172.00.[3] While the Trustee concedes that the Section would allow some exemption, the Trustee has sought to limit that exemption to $15,000.00 of the total proceeds.

■ Bankruptcy exemptions should be interpreted liberally in favor of debtors. *In re Chavis*, 207 B.R. 845 (Bankr.W.D.Pa. 1997), citing, *inter alia, In re Claude*, 206 B.R. 374 (Bankr.W.D.Pa.1997). "If it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *Gaertner v. Claude*, 206 B.R. 374, 377 (Bankr.W.D.Pa. 1997), quoting *In re Dealey*, 204 B.R. 17 (Bankr.C.D.Ill.1997). The burden of establishing an objection to exemption is on the objector. *In re Snyder*, 206 B.R. 347 (Bankr.M.D.Pa.1996). To satisfy its burden of proving that an exemption is not properly claimed, the objector must establish this fact by a preponderance of the evidence. *In re Klaus*, 228 B.R. 475 (Bankr.N.D.Okla.1999).

■ Property is exempt under Section 522(d)(11)(C) of the Bankruptcy Code to the extent that it is "reasonably necessary for the support of the debtor and any dependant of the debtor...." Unfortunately, the phrase "reasonably necessary for support" is not defined in the Bankruptcy Code. However, a review of the legislative history reveals that Congress

This amount seems to be derived from addition of the two insurance amounts ($50,-172.00 + $10,016.00) minus the conceded amount of $15,000.00. For purposes of this Opinion, the Court dealt only with the original objection to the ING Group proceeds of $50,172.00.

intended to limit its scope to subsistence, rather than lifestyle maintenance. The House Report on the exemption provisions reiterates that the "historical purpose of exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." H.R.Rep. No. 95–595, 95th Cong., 2d Sess., at 126 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, at 6087. The court must take into account income and other exempted property of the debtor, current and anticipated, to set aside an amount sufficient to sustain the basic needs, not related to social status or established lifestyle, but enough to accommodate the subsistence needs of the party. *In re Comp,* 134 B.R. 544, 554 (Bankr.M.D.Pa.1991); *In re Velis,* 123 B.R. 497 (D.N.J.1991), citing *Warren v. Taff (In re Taff),* 10 B.R. 101 (Bkrtcy. D.Conn.1981).

In order to interpret this "reasonably necessary" requirement, it is helpful to look to its use in other parts of the statute as well. *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 567, 115 S.Ct. 1061, 1066, 131 L.Ed.2d 1 (1995) ("[A] term should be construed, if possible, to give it a consistent meaning throughout the Act."); *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990); *Martin v. Kelley,* 803 F.2d 236, 242 (6th Cir. 1986) ("[W]ords or phrases should be given consistent meaning when used in related regulations unless the regulation specifically provides otherwise").

The reasonable needs limitation of Section 522(d) was derived "in large part from the Uniform Exemption Act." *In re Margaret W. Tooker,* 174 B.R. 33, 35 (Bkrtcy. D.Vt.1994), quoting *In re Sheridan,* 38 B.R. 52, 57 (Bkrtcy.D.Vt.1983); *In re Miller,* 33 B.R. 549, 553 (Bkrtcy.D.Minn.1983). The Uniform Exemption Act sets forth, and courts interpreting the limitation have adopted an approach considering eleven factors: (1) debtor's present and anticipated living expenses; (2) debtor's present and anticipated income from all sources; (3) the age of the debtor and his or her dependants; (4) the health of the debtor and his or her dependants; (5) debtor's ability to earn a living; (6) debtor's job skills, education and training; (7) debtor's other assets, including exempt assets; (8) the liquidity of these other assets; (9) debtor's ability to save for retirement; (10) the special needs of the debtor and his or her dependants; and (11) debtor's continuing financial obligations, e.g., alimony or support payments. *In re Velis, supra.* at 510; *In re Tooker,* 174 B.R. 33, 35 (Bkrtcy. D.Vt.1994); *In re Comp,* 134 B.R. 544, 554 (Bankr.M.D.Pa.1991); *In re Flygstad,* 56 B.R. 884, 889–890 (Bkrtcy.N.D.Iowa 1986); *In re Bartlett,* 67 B.R. 455, 457 (Bkrtcy. W.D.Mo.1986); *In re Hotchkiss,* 93 B.R. 546, 548 (Bkrtcy.N.D.Ohio 1988).

The parties have implicitly stipulated [4] that the Debtor's monthly living expenses were $1,472.79, and her monthly net income was $1,120.64, on or about August 15, 2001, when the Stipulation was filed.[5] The Debtor has a high school education and has been in her present job (county courthouse clerk) for thirteen years. She and her dependant children (ages 4 and 10) are in good health with no special needs. In addition to nominal exempted assets, the

---

**4.** The Stipulation sets forth original expenses in the schedules of $1,807.79, which had decreased by $335.00 per month, but the current expense figure is not specifically set forth.

**5.** The Court views these expenses as essential in nature inasmuch as the objector has not raised the argument that the stipulated expenses exceeded subsistence level.

Debtor exempted interests in a retirement plan, a 401k plan, proceeds from a life insurance policy (in addition to the proceeds at issue in this case), and certificates of deposit, all with an aggregate value of $31,997.00. The Debtor has no continuing financial obligations such as alimony or support.

If the Debtor's expenses are deducted from her income, there is a monthly deficit of $352.15, and an annual deficit of $4,225.80, for the basic subsistence requirements of the Debtor and her children. This subsistence deficit is the type of situation that Congress was seeking to avoid with the exemption provisions. As previously stated, the "historical purpose of exemption laws has been to protect a debtor ... so that ... the debtor will not be left destitute and a public charge." H.R.Rep. No. 95–595, 95th Cong., 2d Sess., at 126 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, at 6087. If we assume that the expenses will increase proportionately with her income, with an average rate of inflation, the ever-increasing deficit will likely consume the entire proceeds of the insurance by the time the Debtor's youngest child reaches the age of 18. This analysis, though, does not account for the fact that clothing and incidental expenses will increase as the children grow, food costs are likely to rise, and other expenses such as transportation, activities fees, and entertainment will mount as well.

The retirement needs of the Debtor must also be evaluated. As of the Stipulation date, the Debtor had retained an interest in a pension plan ($17,058.00 value) and a 401k plan ($1,049.00 value). While there is no indication in the record of the Debtor's age, it is not a decisive factor. If the Debtor is young, an early access to her pension and her 401k would presumably result in imposition of income tax and an early withdrawal penalty, with a resultant diminution of these assets likely to be 20% or more. 26 U.S.C. § 1 and § 72(t). If the Debtor is near retirement age and suffers no early withdrawal penalties, the total value of uncontested exempt assets ($31,997.00) is insubstantial for her entire term of retirement [6].

In *In re Tooker*, 174 B.R. 33 (Bankr. D.Vt.1994), the Court held that a 62-year-old widow, with net monthly income of $2,282.50, no dependants, liquid assets of $19,186 retained through bankruptcy, and $21,954 in uncontested exempt assets, was entitled to retain life insurance proceeds of $175,850.78 under the eleven-prong test applied above. Although the Court was applying Vermont State exemptions, it adopted the same test that has been applied here. The Court found that the debtor had a life expectancy of 14.78 years, and her expenses would exceed her income by approximately $150,000 in that time. In the case before me, there are two minor children, and we are dealing with less than one-third the insurance proceeds discussed in *Tooker*.

Finally, although the Debtor and her children are currently in good health and the Debtor has family health insurance from her employer, there is a $250.00 deductible on that policy. We have no indication whether the deductible is a family or individual limit, but, in either case, it cannot be characterized as inconsequential. Also, a co-payment on covered services and medications is likely required.

**6.** Where a creditor failed to provide evidence of the Chapter 13 debtor's future needs when the debtor retired, creditor failed to carry its burden of proof to establish that debtor's retention of his individual retirement account (IRA) was not reasonably necessary for his support within the meaning of Ohio's exemption for IRAs. *In re Erbaugh,* 199 B.R. 367 (Bankr.S.D.Ohio 1996).

After a review of the relevant factors, I find that all of the insurance proceeds are reasonably necessary for the subsistence of this Debtor and her two minor children. Consequently, the Trustee's Objection to the Debtor's exemption is hereby overruled.

An Order will follow.